Dorothy WEINSTEIN, Executrix of the Estate of Ralph Weinstein, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Thelma P. FREEMAN and Provident Tradesmens Bank and Trust Company, Co-Executors of the Estate of Addison B. Freeman, Jr., Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Mary B. GRICE, Executrix of the Estate of David S. Grice, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporations and Lockheed Aircraft Corporation.

Diane BRAFF, Administratrix ad Prosequendum and as General Administratrix of the Estate of Bernard Jay Braff, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Edna E. LONG and Laura Manney, Administratrices of the Estate of Shirley E. Reitz, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Attilio E. ABATE, Administrator of the Estate of Frederick N. Abate, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Joseph THOMPSON, Jr., Administrator of the Estate of Letha Mae Thompson, Deceased,

v.

EASTERN AIRLINES, INC., General Motors Corporation and Lockheed Aircraft Corporation.

Nos. 321, 323, 325, 327, 329, 335, 375 of 1961.

United States District Court
E. D. Pennsylvania.

March 19, 1962.

members were killed and injured as a result of the crash.

The libels filed in these seven cases all allege the liability of Eastern Airlines, Inc. on two broad theories of action. First, it is alleged that respondent Eastern Airlines, Inc. was negligent in its maintenance, operation and control of the airplane. Second, it is alleged that respondent Eastern Airlines, Inc. breached an alleged warranty that the airplane was safe, airworthy and fit to be used as a common carrier for hire by air and breached the contract and warranty to provide safe and airworthy transportation.

Admiralty jurisdiction of the court is invoked by libellants on the ground that the aircraft crashed into the navigable waters of Boston Harbor shortly after the aircraft had become airborne following take-off.

I. Admiralty jurisdiction does not encompass tortious causes of action arising from crashes of airplanes into the navigable waters of a state.

■ The admiralty jurisdiction of this court is set forth in 28 U.S.C.A. § 1333, which provides that District Courts shall have original jurisdiction of "(1) any civil case of admiralty or maritime jurisdiction * * *." The admiralty or maritime jurisdiction referred to is pursuant to Article III, § 2, Clause I, of the Constitution of the United States of America.

Milton M. Borowsky, Philadelphia, Pa., for libellants.

Robert E. Jones, Philadelphia, Pa., for Eastern Airlines.

Owen B. Rhoads and George J. Miller, Philadelphia, Pa., for General Motors.

Sidney L. Wickenhaver, Philadelphia, Pa., for Lockheed.

VAN DUSEN, District Judge.

On October 4, 1960, a Lockheed Electra land-based airplane crashed in the harbor of Boston, Massachusetts shortly after its take-off from Logan International Airport, Boston, Mass., on a scheduled flight to the International Airport at Philadelphia, Pa. Passengers and crew

There is no dispute that the landmark case is The Plymonth, 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125 (1865). The court stated at page 36:

"The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."

In spite of the foregoing broad statement, research has failed to disclose any case where it has been held that admiralty had jurisdiction simply because an airplane, as opposed to a seaplane, crashed into the navigable waters of a state.

The rule of The Plymouth, supra, decided in 1865, was stated without any consideration of air travel.

As stated in Mr. Benedict's treatise on admiralty,

"It has nevertheless *been doubted whether the civil admiralty jurisdiction, in cases of tort, does not depend upon the relation of the parties to some ship or vessel and embrace only those tortious violations of maritime right and duty which occur in relation to vessels* to which the admiralty jurisdiction in cases of contract applies. If one of several landsmen bathing in the sea should assault or imprison or rob another, it has not been held that admiralty would have jurisdiction of an action for the tort." I Benedict on Admiralty 351. (Emphasis supplied.)

Libellants contend that, in determining whether or not the nature of the tort was maritime in nature and, therefore, subject to federal admiralty jurisdiction, the courts have adhered strictly to the criterion of "locality."

The opinion of District Judge Dawson in McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961) sets forth a complete and learned discussion of the nature of admiralty and maritime jurisdiction. Here libellant alleged that she was injured while bathing in the waters of New York Harbor. The court had to decide whether an injury to a bather at a public beach occasioned by the negligence of the proprietor of the bathing beach constitutes a cause of action cognizable in admiralty. The court stated at page 868:

"While it has been urged that admiralty has jurisdiction over all torts where the wrong takes place on the high seas or other public navigable waters of the United States, *this position has not been adopted either by the text writers or by the courts. The basis for admiralty jurisdiction must be a combination of a maritime wrong and a maritime location.* A maritime wrong generally has been concluded to be one which in some way is involved with shipping or commerce." (Emphasis supplied.)

Footnote 3 of this opinion states:

"In addition to the requirement of locality, there is a continuing undercurrent which requires that the controversy has a maritime nexus. The tort must arise from a maritime transaction, or be of a maritime nature, or deal with a maritime subject matter. As far as this Court is able to determine, all the cases in which admiralty jurisdiction has been accepted, have in fact dealt with a maritime subject matter. See, Note, 16 Harv.L.Rev. 210 (1903)."

In the course of its discussion, the court stated at pages 870–871 that:

"*Not every tort committed on admiralty waters may be redressed in the admiralty courts.* Only those which have a maritime character, which deal with a maritime subject matter, are properly within admiralty jurisdiction. Admiralty jurisdiction originates from the early customs of the sea which were adopted in principle as law by commercial peoples. Admiralty was the result of commerce on the high seas; the commerce made possible by sailing vessels. Just as vessels were the source of admiralty, they remain the focal point of admiralty jurisdiction. In very general terms, admiralty jurisdiction relates to things occurring on or to vessels or as a result of the employment of vessels." (Emphasis supplied.)

In Benedict's treatise, it is said:

"Maritime causes naturally center around the ship, the great agent of

maritime enterprise and affairs * * *." 1 Benedict, Admiralty, § 61 (6th Ed. 1940).

Similarly, Robinson has said:

"Transactions are maritime only when connected with a vessel." Robinson, Admiralty, § 8 (1939).

He continues:

"Merely because events occur upon navigable waters does not put them within the admiralty and maritime jurisdiction. Transactions are 'maritime' only when in some way connected with a 'vessel' * * *."

The better rule would require some maritime connection over and beyond the fact that the injury occurred on navigable waters.[1] Many opinions look at not only the "locality test," but also to any "maritime connections."

██ As stated in O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, at pages 42–43, 63 S.Ct. 488, at page 492, 87 L.Ed. 596 (1943):

" * * * admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters."

In Forgione v. United States, 202 F.2d 249, 252–253 (3rd Cir., 1953), the court took the position that for a tort to be a maritime tort the injury must occur on navigable waters. But, as shown in McGuire v. City of New York, supra, not every tort which occurs on navigable waters results in a maritime tort.

"Locality" as a test is a rule that quite *reasonably excludes* some torts but it does not *reasonably include* every tort. Therefore, the use of the locality test in Forgione, supra, was consistent with the rule in McGuire, supra, and does not stand for any rule that admits of admiralty jurisdiction simply because the tort occurred on navigable waters.

██ The better rule would seem to be that, in the absence of statute,[2] a maritime locality plus some maritime connection is necessary for admiralty jurisdiction. Therefore, until Congress establishes such jurisdiction by statute, admiralty jurisdiction does not encompass causes of action arising from crashes of airplanes into the navigable waters of a state and these libels will be dismissed, without prejudice.[3]

1. There are cases where admiralty jurisdiction was held present although the injury did not happen on navigable waters, but the injury was found to have arisen out of maritime activity. In Castillo v. Argonaut Trading Agency, 156 F. Supp. 398 (S.D.N.Y.1957), the court stated that admiralty jurisdiction is not based alone on the place where the injury is inflicted. There the court held that admiralty jurisdiction existed in a claim by seamen for false imprisonment by respondent's employees which arose out of a disagreement related to conditions on board respondent's vessel on which libellants were employed. The alleged tort had a direct relationship to the operation of the vessel without regard to where the false imprisonment occurred.

2. Where jurisdiction is founded on the provisions of § 1 of the Death on the High Seas Act, 46 U.S.C.A. § 761, which creates a cause of action for wrongful death "occurring on the high seas beyond a marine league from the shore of any State," and further confers jurisdiction in admiralty upon the District Courts of the United States to hear and determine such suits, the jurisdiction is based on the statute. See Noel v. Airponents, Inc., 169 F.Supp. 348 (D.N.J. 1958); Stiles v. National Airlines, 161 F.Supp. 125 (E.D.La.1958); Higa v. Transocean Airlines, 124 F.Supp. 13 (D. Hawaii 1954). These cases are not precedents for the claims being made here that admiralty jurisdiction attaches solely because the airplane crashed in Boston Harbor, since there is no allegation that the crash occurred more than one marine league from the shore.

3. It is noted that Civil Actions (Nos. 30302 to 30307, incl.) are pending in this District by these libellants against Eastern Air Lines, Inc., arising out of the same airplane accident. Therefore, this ruling will not deprive them of their only remedy.

434

II. To confer jurisdiction upon admiralty for breach of contract, there must be some maritime activity involved in the occurrence upon which the claims are based.

 For libellants to recover upon any alleged breach of contract for the death of their decedents, there must be jurisdiction in admiralty with respect to such claims. In these libels there is no maritime contract involved between any of libellants' decedents and respondent, Eastern Airlines, Inc.

The traditional criterion of admiralty jurisdiction as to contracts is whether the contract is maritime, having reference to maritime service or maritime transactions. James Richardson & Sons v. Connors Marine Co., 141 F.2d 226 (2nd Cir., 1944).

Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co., 151 F. 440 (7th Cir., 1907), stated at page 443:

" * * * the doctrine is settled that the contract articulated in a libel must be, directly and in essence, an obligation maritime in its nature, for the performance of maritime service or transactions, to confer jurisdiction."

While it is assumed that a contract between libellants' decedents and respondent did exist, such contract had no maritime aspects at all. It covered a flight by land plane from one airport on land to another airport on land and there has been no showing that any substantial part of the flight was over the sea.

Since there was no maritime activity involved in the occurrence upon which the claims herein are based, there is no admiralty jurisdiction present as to the contract claims described in the libels.

ORDER

AND NOW, March 19, 1962, IT IS ORDERED that the EXCEPTIONS OF RESPONDENT, Eastern Airlines, Inc., in the above-captioned admiralty actions are sustained, and these actions, insofar as they have been brought against Eastern Airlines, Inc., respondent, are dismissed, without prejudice.