Dorothy WEINSTEIN, Executrix of the Estate of Ralph Weinstein, Deceased, Appellant,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Thelma P. FREEMAN and Provident Tradesmens Bank and Trust Company, Co-Executors of the Estate of Addison B. Freeman, Jr., Deceased, Appellants,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Mary B. GRICE, Executrix of the Estate of David S. Grice, Deceased, Appellant,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Diane BRAFF, Administratrix ad Prosequendum and as General Administratrix of the Estate of Bernard Jay Braff, Deceased, Appellant,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Edna E. LONG and Laura Manney, Administratrices of the Estate of Shirley E. Reitz, Deceased, Appellants,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Attilio E. ABATE, Administrator of the Estate of Frederick N. Abate, Deceased, Appellant,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft Corporation.

Joseph THOMPSON, Jr., Administrator of the Estate of Letha Mae Thompson, Deceased, Appellant,

v.

EASTERN AIRLINES, INC., General Motors Corporation, and Lockheed Aircraft, Corporation.

Nos. 14023-14029.

United States Court of Appeals Third Circuit.

Argued Dec. 6, 1962.

Decided April 26, 1963.

759

Milton M. Borowsky, Philadelphia, Pa., for libellants-appellants (Abraham E. Freedman, Marvin I. Barish, Morton Rosen, Freedman, Landy & Lorry, Philadelphia, Pa., on the brief).

Thomas F. Mount, Philadelphia, Pa., for appellees (J. Grant McCabe, III, Rawle & Henderson, Philadelphia, Pa., for appellee Eastern Airlines, Inc., Owen B. Rhoads, Arthur E. Newbold, III, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee General Motors Corp., Sidney L. Wickenhaver, Hugh G. Moulton, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellee Lockheed Aircraft Corp., on the brief).

Before BIGGS, Chief Judge, STALEY, Circuit Judge, and LEAHY, District Judge.

BIGGS, Chief Judge.

This appeal raises the novel and interesting question of whether an action for wrongful death arising out of the crash of an aircraft in navigable waters within one marine league from shore lies within the admiralty jurisdiction of the United States.

At approximately five o'clock in the afternoon of October 4, 1960, Eastern Airlines Flight No. 375, a land-based

Lockheed Electra aircraft, took off from Logan International Airport in Boston, Massachusetts, on a scheduled flight to Philadelphia, Pennsylvania. Shortly after becoming airborne, the aircraft crashed into the navigable waters of Boston Harbor. The libellants' decedents, passengers on board the aircraft, were killed as a result of the crash.

Libels in personam were filed in the United States District Court for the Eastern District of Pennsylvania, in admiralty, by the personal representatives of seven deceased passengers against Eastern Airlines, Inc., the owner and operator of the aircraft, Lockheed Aircraft Corporation, the manufacturer of the plane, and General Motors Corporation, the manufacturer of the aircraft's power plant.[1] The libels alleged that Eastern had been negligent in maintenance, operation and navigation of the aircraft and that Lockheed and General Motors had been negligent in the design, manufacture and inspection of the aircraft and power plant respectively, and had failed to make necessary alterations and modifications or warn Eastern of the necessity to do so. Additional allegations of breach of warranty were directed against all three respondents.[2] Exceptions to the libels were filed by the respondents on the grounds that the

claims asserted were not within the jurisdiction of a court sitting in admiralty.

The court below sustained the respondents' exceptions and dismissed the actions in an order dated March 19, 1962, the order appealed from.[3] The court held[4] that admiralty jurisdiction in cases of tort depends "in the absence of statute, [upon] a maritime locality plus some maritime connection * * *. Therefore, until Congress establishes such jurisdiction by statute, admiralty jurisdiction does not encompass causes of action arising from crashes of airplanes into the navigable waters of a state * *."[5] With regard to the contract and warranty claims, the court ruled that "The traditional criterion of admiralty jurisdiction as to contracts is whether the contract is maritime, having reference to maritime service or maritime transactions."[6] The contracts in the cases now on appeal, it held, "had no maritime aspects at all."[7] We find for the reasons set out hereinafter that the court below was in error as to the issue of tort jurisdiction but was correct as to the allegedly maritime contracts herein involved.

The Constitution of the United States, Article III, Section 2, provides that the judicial power of the United States shall extend to "all Cases of admiralty and maritime Jurisdiction". Statutory im-

1. The United States of America was originally named as a respondent in the libels. By an order of the District Court entered on December 12, 1961, these libels were dismissed as to the United States. See Weinstein v. United States, 200 F. Sup. 448 (E.D.Pa.1961). No appeal was taken from this order and, therefore, no issue as to the liability of the United States is now before this court.

2. It was asserted in the libels that Eastern had breached its "warranty that the aircraft was safe, airworthy and fit to be used as a common carrier for hire by air" and had breached "its contract and warranty to provide * * * safe and airworthy transportation"; that General Motors had breached "its warranty that the engines, propellers and other component parts of the said aircraft furnished by it were proper, safe and suitable * * *"; and that Lockheed had

breached "its warranty that the said aircraft power plants, various component parts, instrumentation, furnishings, controls and structural members were safe, airworthy, proper and suitable for the carriage of passengers by a common carrier engaged in transportation by air."

3. The original order of March 19, 1962, signed by Judge Francis L. Van Dusen, referred only to the causes against Eastern Airlines, Inc. By an order entered on April 6, 1962, however, the order of March 19 was amended nunc pro tunc to include the causes against Lockheed and General Motors.

4. Weinstein v. Eastern Airlines, Inc., 203 F.Supp. 430 (E.D.Pa.1962).

5. 203 F.Supp. 430 at 433.

6. 203 F.Supp. 430 at 434.

7. 203 F.Supp. 430 at 434.

plementation of this constitutional grant was enacted by Congress in substantially identical terms. See 28 U.S.C.A. § 1333.[8]

The critical factor in determining whether a tort claim comes within the broad statutory grant of admiralty jurisdiction is the situs of the tort; i. e., the place where it happened. If the tort occurred on navigable waters,[9] the claim is one that lies within the jurisdiction of the courts of admiralty; nothing more is required. In the landmark case of The Plymouth, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1865), the Supreme Court stated: "The jurisdiction of the admiralty does not depend upon the fact that the injury was inflicted by the vessel, but upon the locality—the high seas, or navigable waters where it occurred. Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." This "locality test" has been consistently reiterated by the courts. "In torts * * * jurisdiction depends solely upon the place where the tort was committed, which must have been upon the high seas or other navigable waters.", State Industrial Comm'n v. Nordenholt Corp., 259 U.S. 263, 271, 42 S.Ct. 473, 66 L.Ed. 933 (1922). "[I]t is well established that the situs of a tort determines whether or not it is maritime. In order to be maritime it must occur on navigable waters subject to admiralty jurisdiction.", Forgione v. United States, 202 F.2d 249, 252–253 (3 Cir.), certiorari denied, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953). "Admiralty jurisdiction extends to every species of tort committed upon the high seas or on navigable waters.", United States v. Matson Navigation Co., 201 F.2d 610, 613 (9 Cir. 1953). "It is clearly established that the jurisdiction of the admiralty over a maritime tort does not depend upon the wrong having been committed on board a vessel, but rather upon its having been committed upon the high seas or other navigable waters.", London Guarantee & Accident Co. v. Industrial Accident Comm'n, 279 U.S. 109, 123–124, 49 S.Ct. 296, 300, 73 L.Ed. 632 (1929). See Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922); Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914); Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870); Dean v. Chesapeake Bay Ferry District, 158 F.Supp. 408 (E.D.Va.1958); Thomson v. Bassett, 36 F.Supp. 956 (W.D. Mich.1940); Fireman's Fund Ins. Co. v. City of Monterey, 6 F.2d 893 (N.D. Calif.1925).[10]

---

**8.** "The district courts shall have original jurisdiction * * * of:
   "(1) Any civil case of admiralty or maritime jurisdiction * * *."

**9.** Waters within the admiralty jurisdiction include not only the high seas but also those navigable in fact, regardless of whether or not they are subject to the ebb and flow of the tide. Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 20 L. Ed. 90 (1870). The waters of Boston Harbor are admittedly navigable, and therefore are within the territorial jurisdiction of admiralty.

**10.** For additional statements of the locality test, see Philadelphia, Wilmington, & Balto. R.R. v. Philadelphia & Havre De Grace Steam Towboat Co., 64 U.S. (23 How.) 209, 215, 16 L.Ed. 433 (1859): "The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts, it depends entirely upon locality." See also Buren v. Southern Pacific Co., 50 F.2d 407, 408 (9 Cir. 1931): "[W]here * * * the locus of the accident is upon navigable waters, * * * this is the test of admiralty jurisdiction in cases of tort."; and Port of New York Stevedoring Corp. v. Castagna, 280 F. 618, 623 (2 Cir. 1922): "That the locality of a tort determines whether or not it is maritime is now so well settled that it is necessary only to refer to Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 Sup.Ct. 733, 58 L.Ed. 1208."
   The test is aptly stated in 2 C.J.S. Admiralty § 59, at pp. 114–115: "The general rule is that the place of injury, namely, whether or not on the high seas or other navigable waters, determines whether or not the injury is maritime; and it has been frequently stated that it

The respondents take the position that admiralty jurisdiction over cases of tort depends not only upon the locus of the tort but upon a finding of some maritime connection or nexus with the alleged wrong. In other words, it is their contention that the tort must have a maritime "flavor" and that an airplane crash in navigable waters lacks this necessary element. This argument, that both locality and a maritime connection are jurisdictional prerequisites, is not a new one. "It has * * * been doubted whether the civil admiralty jurisdiction, in cases of tort, does not depend upon the relation of the parties to some ship or vessel and embrace only those tortious violations of maritime right and duty which occur in relation to vessels to which the admiralty jurisdiction in cases of contract applies.", 1 Benedict, Admiralty § 127 at p. 351 (6th ed.).[11] The respondents cite Campbell v. H. Hackfield & Co., 125 F. 696 (9 Cir. 1903) and McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961) as authority for their position.

In Campbell, the Circuit Court of Appeals for the Ninth Circuit held that a tort claim brought by an employee-longshoreman against his stevedore-employer for personal injuries sustained while loading or unloading the hold of a vessel in navigable waters was not within the jurisdiction of admiralty. The court stated: "In the case of torts, locality remains the test, for the manifest reason that, to give an admiralty court jurisdiction, they must occur in a place where the law maritime prevails. But this is by no means saying that a tort or injury in no way connected with any vessel, or its owner, officers, or crew, although occurring in such a place or territory, is for that reason within the jurisdiction of the admiralty. On the contrary, it is * * * only of maritime contracts, maritime torts, and maritime injuries of which the United States courts are given admiralty jurisdiction." See id., supra, at p. 700.[12]

In the McGuire case, supra, a tort action was brought in admiralty to recover for personal injuries sustained when the libellant struck a submerged object while swimming at a public beach. The court held that the subject matter of the action was outside the jurisdiction of admiralty. The court stated: "That a tort may have occurred on navigable waters is merely a prima facie test of admiralty jurisdiction. * * * Not every tort committed on admiralty waters may be redressed in the admiralty courts. Only those which have a maritime character, which deal with a maritime sub-

---

solely determines the question. The general rule that the place of injury determines its character applies irrespective of the nature and origin of the wrong or injury, of its commission on a vessel, of the place of the act causing the injury, of the maritime character of the instrument of injury or of the object injured, [or] of the relation borne by the wrongdoer to a vessel * * *."

11. See also Gilmore & Black, Admiralty § 1-10 at p. 22, n. 78 (1957 ed.): "It seems to be still unsettled whether any tort whatever, occurring on navigable waters, is within the jurisdiction. Certainly, the courts have used language broad enough to support this conclusion."

12. A contrary result on the same jurisdictional issue was reached by the United States Supreme Court in Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914), where it held that a longshoreman could maintain a tort action in admiralty against his stevedore employer for injuries sustained while working on a vessel in navigable waters. A further extension was made in International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926), in which it was held that longshoremen could maintain an admiralty tort action as "seamen" under the Jones Act. The Federal Longshoremen's and Harbor Workers' Act of 1927, 33 U.S.C.A. § 901 et seq., preempted the field as to direct actions by a longshoreman against his employer, but a tort action in admiralty against a third party contractor was preserved. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Halcyon Lines v. Haenn Ship Ceiling Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952); Crawford v. Pope & Talbot, Inc., 206 F.2d 784 (3 Cir. 1953).

ject matter, are properly within admiralty jurisdiction." See id., supra, 192 F.Supp. at p. 870.

■ McGuire to the contrary notwithstanding,[13] the weight of authority is clearly to the effect that locality alone determines whether or not a tort claim is within the admiralty jurisdiction. In Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733 (1914), the Supreme Court expressly rejected the contention that the tort must, in addition to meeting the locality test, have some connection with a vessel. "[It is contended] that a maritime tort is one arising out of an injury to a ship caused by the negligence of a ship or a person or out of an injury to a person by the negligence of a ship; that there must either be an injury to a ship or an injury by the negligence of the ship, including therein the negligence of her owners or mariners; and that, as there was no negligence of the ship in the present case, the tort was not maritime. This view we deem to be altogether too narrow." Id., supra, at p. 61, 34 S.Ct. at p. 735. Moreover, in Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Calif.1954), a case arising under the Federal Death on the High Seas Act, 46 U.S.C.A. § 761, and involving the crash of an aircraft at sea, it was stated that: "Admiralty tort jurisdiction has never depended upon the nature of the tort or how it came about; but upon the locality where it occurred. * * * Locality has remained the sole test of admiralty tort jurisdiction despite reoccurring expressions of doubt whether the tort must not also bear some relation to the operation of a vessel.", id., supra, at p. 92.

■ Assuming arguendo that some kind of maritime nexus in addition to locality is required as a prerequisite to admiralty tort jurisdiction, we believe nonetheless that the cases at bar are within the admiralty jurisdiction insofar as the tort claims alleged therein are concerned. At the time the Constitution was framed and for a century and a half thereafter, ships of various kinds were the only means of transportation and commerce on or across navigable waters. Today, aircraft have become a major instrument of travel and commerce over and across these same waters. When an aircraft crashes into navigable waters, the dangers to persons and property are much the same as those arising out of the sinking of a ship or a collision between two vessels. "There can be nothing more maritime than the sea.", Pure Oil Co. v. Snipes, 293 F.2d 60, 65 at n. 6 (5 Cir. 1961).

Concepts of admiralty tort jurisdiction should not and cannot remain static and unchanging. In Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 52, 55 S.Ct. 31, 41, 179 L.Ed. 176 (1934), the Supreme Court, by Mr. Chief Justice Hughes, stated: "We have had abundant reason to realize that our experience and new conditions give rise to new conceptions of maritime concerns. These may require that former criteria of jurisdiction be abandoned, as, for example, they were abandoned in discarding the doctrine that the admiralty jurisdiction was limited to tidewaters." See also McGuire v. City of New York, 192 F. Supp. 866, 871 (S.D.N.Y.1961).[14]

An apt analogy to the situation at bar can be drawn, we conclude, from the cases construing the Federal Death on the High Seas Act, 46 U.S.C.A. § 761. The Act provides for a cause of action, in admiralty, for wrongful death occurring beyond one marine league from

---

13. The result reached in McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y. 1961) may well be compatible with the "locality alone" test. To say that a person bathing in the shallow, and probably un-navigable in fact, waters of a public beach is within the locus of admiralty jurisdiction would be to distort the meaning of the locality test beyond what reason and policy would suggest or require.

14. "It is proper that admiralty jurisdiction be extended where commercial necessity so dictates. * * *"

shore.[15] No reference to aircraft is made in the language of the Act.[16] Nonetheless, it has been held clearly that tort claims for wrongful death arising out of the crash of an aircraft on navigable waters beyond one marine league from shore are within the terms of the Act and cognizable in admiralty. See D'Aleman v. Pan American World Airways, 259 F.2d 493 (2 Cir. 1958);[17] Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Calif.1954); Lavello v. Danko, 175 F.Supp. 92 (S.D.N.Y.1959); Noel v. Airponents, Inc., 169 F.Supp. 348 (D.N.J.1958); King v. Pan American World Airways, 166 F.Supp. 136 (N.D.Calif. 1958), aff'd, 270 F.2d 355 (9 Cir. 1959), certiorari denied, 362 U.S. 928, 80 S.Ct. 753, 4 L.Ed.2d 746 (1960); Fernandez v. Linea Aeropostal Venezolana, 156 F. Supp. 94 (S.D.N.Y.1957);[18] Lacey v. L. W. Wiggins Airways, Inc., 95 F.Supp.

916 (D.Mass.1951); Choy v. Pan American Airways, 1941 A.M.C. 483 (S.D. N.Y.).

Prior to the Death on the High Seas Act, 46 U.S.C.A. § 761, a tort, occurring beyond one marine league, which resulted in death did not give rise to a wrongful death claim upon which relief could be granted. Nonetheless, the tort may have been one within the jurisdiction of admiralty as delineated in the Constitution and implemented by 28 U.S.C.A. § 1333. There is, of course, a clear and fundamental difference between jurisdiction and lack of it and failure to state a cause of action. See Wade v. Rogala, 270 F.2d 280, 284 (3 Cir. 1959). The Act, as we have said, creates a cause of action which could not exist absent such a statute. It does not purport to create jurisdiction. See Fernandez v. Linea Aeropostal Venezolana, supra.[19] In the

---

15. The libels in the cases on appeal do not allege that the death occurred beyond one marine league from shore. Therefore the Act is inapplicable.

16. "Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

17. "The purpose of the Act was to create a uniform cause of action where none existed before and which arose beyond the territorial limits of the United States or any State thereof. When the Act was passed (March 30, 1920) the only feasible way to be carried beyond the jurisdiction of any law applicable to wrongful death was by ship. However, with the development of the transoceanic airship the same extraterritorial situation was made possible in the air. * * * The statutory expression 'on the high seas' should be capable of expansion to, under, or, over, as scientific advances change the methods of travel. The law would indeed be static if a passenger on a

ship were protected by the Act and another passenger in the identical location three thousand feet above in a plane were not. * * *" D'Aleman v. Pan American World Airways, 259 F.2d 493, 495 (2 Cir. 1958).

18. "* * * [I]n the absence of a statute an action could not be maintained for death caused by negligence. * * * To correct this situation death acts have been passed in nearly all jurisdictions. This still left a vacuum in the case of deaths which might result from accidents on the high seas. To allow actions to be maintained for deaths in this situation the Death on the High Seas Act was enacted. * * *" Fernandez v. Linea Aeropostal Venezolana, 156 F.Supp. 94, 96–97 (S.D.N.Y.1957).

19. "The statute certainly includes the phrase 'on the high seas' but there is no reason why this should make the law operable only on a horizontal plane. The very next phrase 'beyond a marine league from the shore of any State' may be said to include a vertical sense and another dimension. Certainly what was actually intended was to give a right to damages for wrongful death where no state surely could give it but where only the Federal Government could claim to extend its power. The phrase, we think, was wholly and only geographical." Choy v. Pan American World Airways, 1941 A.M.C. 483, 484 (S.D.N.Y.).

appeals at bar the jurisdictional authority, 28 U.S.C.A. § 1333, is identical with that in the cases under the Death on the High Seas Act. The requisite statutory cause of action for wrongful death, however, is provided here by a state wrongful death act.[20] If, as it has been held, a tort claim arising out of the crash of an airplane beyond the one marine league line is within the jurisdiction of admiralty, then *a fortiori* a crash of an aircraft just short of that line but still within the navigable waters is within that jurisdiction as well. To hold otherwise would be to impose an illogical and irrational distinction on the operation of the broad grant of admiralty jurisdiction extended by the Constitution and implemented by 28 U.S.C.A. § 1333.

█ It is true that the libels in the cases on appeal allege, *inter alia*, negligence in the inspection and maintenance of the aircraft. These allegations refer to allegedly negligent acts committed on land for we cannot assume, in the absence of express averments to such effect, that maintenance of an aircraft or inspection thereof except for emergency purposes takes place in flight. Nonetheless, if the disastrous effects of failure to properly inspect or maintain the aircraft occurred on navigable waters, as was alleged in the instant cases, the tort claims must be deemed to be within the admiralty jurisdiction. In Lavello v. Danko, 175 F.Supp. 92 (S.D.N.Y.1959), a case arising under the Death on the High Seas Act, the libel alleged that the crash of the aircraft at sea was proximately caused by failure to properly inspect and repair the aircraft on shore. The court held that the tort claims were within the jurisdiction of admiralty. "Even if the tortious conduct * * *

occurred within the territorial limits of this State, if the impact of the tortious conduct took place * * * over the high seas then this [admiralty] Court has jurisdiction * * *.", id., supra, at 93. See Noel v. Airponents, Inc., 169 F.Supp. 348 (D.N.J.1958). In Wilson v. Transocean Airlines, Inc., 121 F.Supp. 85, 92 (N.D.Calif.1954) the court said: "In applying the 'locality' test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action." See also Lacey v. L. W. Wiggins Airways, Inc., 95 F.Supp. 916 (D.Mass.1951); Fireman's Fund Ins. Co. v. City of Monterey, 6 F.2d 893 (N.D. Calif.1925); Thomson v. Bassett, 36 F. Supp. 956 (W.D.Mich.1940); The City of Lincoln, 25 F. 835 (S.D.N.Y.1885).

█ The respondents argue that the Federal Aviation Act of 1958, 49 U.S. C.A. § 1301 et seq. (1962 Supp.), precludes the exercise of admiralty jurisdiction as to aircraft crashes in navigable waters. 49 U.S.C.A. § 1509(a) provides in pertinent part that "[T]he navigation and shipping laws of the United States * * * shall not be construed to apply to seaplanes or other aircraft * * *." The brief correct answer to this contention is that the Federal Aviation Act is not a statute intended either to creat or to limit judicial jurisdiction. "The principal purpose of this legislation is to establish a new Federal agency with powers adequate to enable it to provide for the safe and efficient use of the navigable airspace by both civil and military operations." 1958 Cong. & Admin. News, p. 3741. In Wilson v. Transocean Airlines, 121 F.Supp. 85, 93 (N.D.Calif.

---

20. As we have said, the Death on the High Seas Act, 46 U.S.C.A. § 761, is not applicable in the cases on appeal. Nonetheless, a statutory cause of action for wrongful death may well exist. Where the death occurs on navigable waters within the territorial jurisdiction of a state, as here, state wrongful death statutes would be operative in the admiralty

courts. Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953); Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921); The H.S., Inc., No. 72, 130 F.2d 341 (3 Cir. 1942).

1954), the argument herein urged by the respondents was raised and rejected, the court stating "The term 'navigation and shipping laws' * * * obviously refers to those federal laws specifically governing the navigation and operation of the merchant marine. The term was never intended to include a general admiralty statute * * *." With reference to the predecessor to the 1958 Act, the Air Commerce Act of 1926, 44 Stat. 568, which contained the same language as the pertinent section in the Federal Aviation Act of 1958, Benedict states: "It will be noted that the Act does not go so far as to deny the existence of admiralty and maritime jurisdiction generally over aircraft * * *." 1 Benedict, Admiralty § 58, at pp. 118–119 (6th ed.). See also Choy v. Pan American Airways, 1941 A.M.C. 483, 485 (S.D.N.Y.).

We are of the opinion for the reasons stated that the tort claims *sub judice* lie within the admiralty jurisdiction of the court below.

■■ The claims involving breach of contract and of warranty in the appeals at bar present a different situation. See note 2, supra. Admiralty jurisdiction over contracts is dependent upon the subject matter of the contract. The test is very different from that applicable in respect to tort claims. State Industrial Comm'n v. Nordenholt Co., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922).[21] "[It] is settled that the contract articulated in a libel must be, directly and in essence, an obligation maritime in its nature, for the performance of maritime service or transactions, to confer jurisdiction." Pacific Surety Co. v. Leatham & Smith Towing Co., 151 F. 440, 443 (7 Cir. 1907). See also James Richardson & Sons v. Conners Marine Co., 141 F.2d

226 (2 Cir. 1944); Philadelphia, Wilmington & Balto. R.R. v. Philadelphia & Havre De Grace Steam Towboat Co., 64 U.S. (23 How.) 209, 16 L.Ed. 433 (1859). It is clear, we believe, that a contract or warranty relating to the airframe or power plant of a land-based aircraft and a contract of carriage by air between two cities on the United States mainland are not maritime in substance, nor are such contracts and warranties made maritime by virtue of the fact that the aircraft in question flew briefly over navigable waters en route from Boston to Philadelphia.[22] Admiralty jurisdiction in tort attaches only if the consummation of a wrongful act or acts occurs within the territorial limits of that jurisdiction, that is to say, within navigable waters. But it does not necessarily follow from this that the entire flight and everything connected with it is maritime as well.

■■ We hold, therefore, that tort claims arising out of the crash of a land-based aircraft on navigable waters within the territorial jurisdiction of a state are cognizable in admiralty. We further hold, however, that contracts and warranties referring to the entire portion of the flight of a land-based aircraft from one mainland city to another are not justiciable in admiralty notwithstanding the fact that their breach is alleged as the result of a crash into navigable waters traversed as a segment of a primarily over-land flight.

Accordingly, the judgments of the court below will be reversed as to the tort claims alleged but affirmed as to the contract and warranty claims. The cases will be remanded for further proceedings as the facts and law may require.

---

21. "In determining whether a contract be of maritime nature, locality is not controlling, since the true test is the subject-matter of the contract—the nature and character of the work to be done. * * * In torts the rule is different. There, jurisdiction depends solely upon the place where the tort was committed * * *." State Industrial Comm'n v.

Nordenholt Co., supra, at 271, 42 S.Ct. at 473. See also Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922).

22. We, of course, do not decide whether such contracts would be maritime in substance were the aircraft involved a trans-Atlantic carrier en route from Boston, to, for example, Shannon, Ireland.