The **INTERLAKE STEAMSHIP COM-PANY**, Plaintiff-Appellee,

v.

Marcella R. **NIELSEN**, Defendant-Appellant.

The **INTERLAKE STEAMSHIP COM-PANY**, Plaintiff-Appellee,

v.

Stephen O'**HEARNE**, as successor to John J. Newman, Deputy Commissioner Administering the Longshoremen's and Harbor Workers' Compensation Act, Defendant-Appellant.

Nos. 15705, 15706.

United States Court of Appeals Sixth Circuit.

Dec. 3, 1964.

J. Harold Traverse, Cleveland, Ohio, for appellant Marcella R. Nielsen.

Leavenworth Colby, Atty., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Merle M. McCurdy, U. S. Atty., Elmer A. Giuliani, Asst. U. S. Atty., Cleveland, Ohio, on the brief), for appellant Deputy Commissioner.

Robert B. Preston, Cleveland, Ohio (Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, on the brief), for appellee.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and PRETTYMAN, Senior Circuit Judge.[1]

EDWARDS, Circuit Judge.

The claimant-appellant in this appeal is the wife of the deceased shipkeeper of the SS ARCTURUS, owned by The Interlake Steamship Company, appellee.

The ARCTURUS was berthed for the winter of 1959 at a Lake Erie dock. In the course of his employment decedent drove his car off the end of the dock where his ship was berthed. He died of a skull fracture occasioned by impact upon the frozen waters of Lake Erie. Lake Erie is, of course, part of the navigable waters of the United States of America and hence part of its admiralty jurisdiction.

Here an award of compensation under the Longshoremen's and Harbor Workers' Compensation Act was entered after hearing by a Deputy Commissioner. Interlake thereupon brought proceedings to attack the compensation award before the United States District Court for the Northern District of Ohio. After hearing the District Judge set the award aside on the sole ground that the fatal injury did not occur upon "navigable waters."

As we see this case, decedent broke his skull on that very substance.

Decedent Nielsen had as part of his responsibility checking the mooring lines of his vessel both day and night and the testimony at hearing before the Deputy Commissioner administering the Longshoremen's and Harbor Workers' Compensation Act indicated that he frequently did this by automobile on the roadway on the dock. The ARCTURUS was 550 feet long, and she was berthed so that 50 feet of her bow extended beyond the end of the dock.

Nielsen, as sole custodian of the ship, was on duty twenty-four hours per day. He slept on board; but was allowed to go home for his meals.

On the night of January 10, 1959, Nielsen left home after supper. His body was found Monday, January 12, behind the wheel of his car in 25 feet of water beyond the end of the dock where the SS ARCTURUS was berthed. The top of his car was caved in as a result of landing upside down on the ice and an autopsy showed that Nielsen had died as a result of a fractured skull.

The hearing developed no other decisive facts, and the Deputy Commissioner found that Nielsen had been killed in the course of his employment. This finding is uncontested on this appeal.

1. Senior Circuit Judge E. Barrett Prettyman of the District of Columbia Circuit sitting by designation.

On review before the United States District Court the Interlake Steamship Company contended, among other things, that the award was invalid since the injury did not take place within the admiralty jurisdiction of the United States of America.

This proceeding resulted in the adverse finding by the District Judge to which we have referred.

The applicable statutory provision is:

"§ 903.  *Coverage*

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any drydock) * * *."  33 U.S.C. § 903(a).

If this language and the observation with which we have opened this opinion seem simple, nothing else about the interpretation of this statute is.

In our present case the District Judge in reciting the facts said: "Carl Nielsen drove off the dock and crushed his skull on the ice below."  But he also found as a matter of law that these stark facts put Nielsen outside of admiralty jurisdiction:

"In a compensation case where we are not concerned with breach of duty, I think the test must be that if the impetus which put in motion the sequence of events resulting in the fatal accident came from the land, and operated on the person injured while on land, then there can be no jurisdiction and no valid award."

In this holding the District Judge relied upon a series of cases wherein under quite different fact situations judicial language could be read as giving support to his view.  The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); L'Hote v. Crowell, 54 F.2d 212 (C.A.5, 1931), reversed on other grounds, 286 U.S. 528, 52 S.Ct. 499, 76 L.Ed. 1270 (1935); Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935); Smith & Son v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928); The Strabo, 98 F. 998 (C.A.2, 1900).

Of these cases, two were actions based on events which preceded the effective date of the Longshoremen's and Harbor Workers' Compensation Act in 1927.  All preceded adoption of the Admiralty Extension Act in 1948.[2]  All preceded the latest authoritative statement of the United States Supreme Court concerning admiralty jurisdiction as applicable to the Longshoremen's and Harbor Workers' Compensation Act in Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962).

It should also be noted that four out of five of these same cases actually upheld admiralty jurisdiction.  In the other case, Smith & Son v. Taylor, supra, the court's opinion affirmed a state compensation award (no federal act then being effective).  The holding denied that "the case is *exclusively* within admiralty jurisdiction" as claimed by appellants therein.  Smith & Son v. Taylor, supra, 276 U.S. at 182, 48 S.Ct. at 229.  (Emphasis added.)

We also note that there are cited to us a series of somewhat more modern cases which support appellant's view to a greater or lesser degree.  Thomson v. Bassett, 36 F.Supp. 956 (W.D.Mich.1940), aff'd without opinion, 1942 Am.Mar.Cas. 184; Pure Oil Company v. Snipes, 293 F.2d 60 (C.A. 5, 1961); Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (C.A. 3, 1963), cert. denied, 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1964).  None of these, however, is directly in point; and these, too, may suffer from some legal obsolescence as a result of the factors noted above.

Even before the Calbeck decision textwriters on admiralty had noted the obsolescence of many older precedents in the case law pertaining to longshoremen's and dock workers' injuries:

"The radical reconstruction of maritime personal injury law since

2.  Title 46 U.S.C. § 740.

1940 has made much of the older case law of little more than antiquarian interest. The volume of personal injury litigation since 1945, and particularly since 1950, has been so great that exhaustive citation of recent lower court cases would be an almost impossible task. These cases were decided against a rapidly changing background and many of them were of merely transitory interest; since the Supreme Court has claimed the field of maritime personal injury litigation as its own, lower court decisions have suffered from rapid technological obsolescence. Thus exhaustive citation to them would be fruitless and unhelpful. * * * "[3]

█ While the Admiralty Extension Act of 1948 obviously was not designed directly to affect the Longshoremen's and Harbor Workers' Compensation Act, it did serve to make clear that admiralty jurisdiction could extend to damage caused on land by maritime events, although early case law had held to the contrary. (See Cleveland Terminal & Valley R. R. Co. v. Cleveland Steamship Co., 208 U.S. 316, 28 S.Ct. 414, 52 L.Ed. 508 (1908); State Industrial Commission of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922)).

Much more to the point in our instant situation is the latest authoritative interpretation of the extent of admiralty jurisdiction under the Longshoremen's and Harbor Workers' Compensation Act made by the United States Supreme Court in Calbeck v. Travelers Insurance Co., supra.

Discussing this statute the Court said:

"There emerges from the complete legislative history a congressional desire for a statute which would provide federal compensation for all injuries to employees on navigable waters;" Calbeck v. Travelers Insurance Co., supra, 370 U.S. at 120, 82 S.Ct. at 1200. (Footnote omitted.)

The Supreme Court opinion in Calbeck then quoted with approval a Fifth Circuit Court opinion [De Bardeleben Coal Corp. v. Henderson, 142 F.2d 481 (C.A. 5, 1944)] commenting on the "State law" provision:

"' * * * It is sufficient to say that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority and that the provision "if recovery * * * may not validly be provided by State law" was placed in the act not as a relinquishment of any part of the field which Congress could validly occupy but only to save the act from judicial condemnation, by making it clear that it did not intend to legislate beyond its constitutional powers. * * * In the application of the act, therefore, the broadest ground it permits of should be taken.'" Calbeck v. Travelers Insurance Co., supra, 370 U.S. at 130, 82 S.Ct. at 1205.

The Court then reached a conclusion which we read as rejecting many of the past decisions dealing with the limits of state versus admiralty jurisdiction:

"In sum, it appears that the Longshoremen's Act was designed to ensure that a compensation remedy existed for all injuries sustained by employees on navigable waters, and to avoid uncertainty as to the source, state or federal, of that remedy. Section 3(a) should, then, be construed to achieve these purposes." Calbeck v. Travelers Insurance Co., supra at 124, 82 S.Ct. at 1202.

█ It seems obvious to us that the trend of case law, the impact of the Admiralty Extension Act, and the effect of Calbeck have all pointed in the direction of expanding the boundaries of admiralty jurisdiction toward land. It does not require any great clairvoyance to hold

3. Gilmore and Black, The Law of Admiralty (1957), Chapter 6, Rights of Seamen and Maritime Workers; Recovery for Death and Injury, sec. 6-5, n. 12, page 253.

that at present admiralty jurisdiction clearly encompasses the navigable waters immediately adjacent to a dock.[4]

If Calbeck holds (and we think it does) "that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority," then there can be no doubt about the outcome of this appeal. No one asserts that claimant was killed (or injured) until the impact on the frozen substance of the navigable waters at the end of the dock. The fact which impressed the District Judge—that the impetus which propelled claimant onto the ice had a land-based origin—does not alter the fact that the situs of his injury and death was clearly within the scope of admiralty jurisdiction.

Reversed for entry of a compensation order in accordance with the award of the Deputy Commissioner.

---

4. In this regard we have considered and rejected language relied upon by appellee from Atlantic Stevedoring Co. v. O'Keeffe, 220 F.Supp. 881 (S.D.Ga.1963), finding this District Court opinion neither binding nor persuasive.