R. E. SMITH, Plaintiff,

v.

W. F. GUERRANT and Guerrant Construction Company, Defendants.

Civ. A. No. 68–G–14.

United States District Court
S. D. Texas,
Galveston Division.

Sept. 24, 1968.

———◆———

Stillwell & Brown, Houston, Tex., for plaintiff.

Jean E. Hosey, Galveston, Tex., for defendants.

## MEMORANDUM AND OPINION

NOEL, District Judge.

Plaintiff engaged defendant's crane to lift his Hyster forklift from a jetty up on a dock. The crane was positioned on the dock, and its tackle attached to the forklift. The forklift was boomed up, but as the crane was swinging it over to the dock, the boom collapsed, dropping the forklift into the waters of the Galveston Yacht Basin. Plaintiff filed this action in admiralty, alleging that the tort was maritime because it was consummated in the water. Defendant cross-complained for the damage to its crane, but plaintiff moved to dimiss the cross-complaint for want of jurisdiction, arguing that because the crane was injured before any part of it struck the water, the tort alleged by defendant was outside the admiralty and maritime jurisdiction. On its own motion, the court then questioned jurisdiction of the original complaint as well. Neither party has alleged a connection between the alleged torts and maritime commerce or navigation; hence if locality alone is insufficient to sustain admiralty tort jurisdiction, both claims must be dismissed. The issue, therefore, is to choose between the strict locality test of admiralty tort jurisdiction and the maritime connection test.

The strict locality test has been stated so frequently that courts often invoke it as a general rule,[1] but the commentators note that jurisdiction has never been upheld solely on the basis of locality.[2] Whenever a court has found no maritime connection, it has refused to take jurisdiction.[3] When asked to hold that locality alone would support jurisdiction in admiralty, the Supreme Court instead found a longshoreman's work a maritime activity and reserved the broader question.[4]

In this case the broad question must be answered, for the tort claim here is wholly unrelated "to maritime service, to navigation, and to commerce on navigable waters."[5] Plaintiff's Hyster forklift, while unattended, ran off a wharf in the Galveston Yacht Basin and came to rest on a finger pier or walkway. Defendant's crane was engaged to lift the forklift and place it back on the dock. The crane's boom collapsed, dropping the forklift into the waters of the harbor.

Plaintiff's claim is for water damage. No relation to maritime concerns is alleged, and the Court finds that none exists. That the forklift was dropped in the water and not on the dock or the finger pier was fortuitous. If a maritime connection is needed to sustain jurisdiction in admiralty, plaintiff's claim must be dismissed.

■ Jurisdiction in this action is premised on 28 U.S.C. § 1333 and article III, § 2 of the United States Constitution.[6] For there to be jurisdiction, of course, this case must be within the power conferred by statute, and the statute must be constitutional.[7] Here it is unnecessary to determine the breadth of the constitutional provision, for the answer to the preliminary question is dispositive. The two questions are not the same, and cases construing the constitutional provision are not directly applicable to this question of statutory construction. Although the words of the statute and those in the Constitution are almost identical,

1. E. g., Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321 (1922).

2. 1 E. Benedict, The Law of American Admiralty § 127, at 351 (6th ed. A. Knauth 1940); G. Gilmore & C. Black, The Law of Admiralty, 22 n. 78 (1957); M. Norris, The Law of Maritime Personal Injuries § 75 (1959).

3. Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967); Campbell v. H. Hackfeld & Co., 125 F. 696 (9th Cir. 1903); Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555 (D.Md.1965); McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y. 1961).

4. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 61, 34 S.Ct. 733, 58 L.Ed. 1208 (1914). This question has never been decided by the Supreme Court. In The Raithmoor, 241 U.S. 166, 176, 36 S.Ct. 514, 60 L.Ed. 937 (1916), it was again expressly left open. The strict locality test has been stated in two subsequent cases, but in both of them the relation between the dispute and maritime commerce was manifest. State Industrial Comm'n of State of New York v. Nordenholt Corp., 259 U.S. 263, 271, 42 S.Ct. 473, 66 L.Ed. 933 (1922); Grant Smith-Porter Ship

Co. v. Rohde, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321 (1922).

5. Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 62, 42 S.Ct. 473, 66 L.Ed. 933 (1914).

6. U.S.Const. art. III, § 2: "The judicial Power shall extend * * * to all Cases of admiralty and maritime Jurisdiction; * * *."
28 U.S.C. § 1333:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
\* \* \* \* \*
Although plaintiff cites no specific jurisdictional statute, the Court has assumed that he intended to invoke the general admiralty jurisdiction statute, which is § 1333. In any event he has failed to allege facts that would bring him within the coverage of any of the special jurisdictional statutes.

7. Sheldon v. Sill, 8 How. (49 U.S.) 441, 12 L.Ed. 1147 (1850); Hodgson v. Bowerbank, 5 Cranch (9 U.S.) 303 (1809). See generally 1 J.Moore, Federal Practice ¶ 0.60 [2], at 605 (2d ed. 1959).

the two provisions need not be construed alike, for they were adopted by different bodies for different purposes.[8] The clause in the Constitution was adopted by the Convention to permit the national government to maintain the uniformity of the existing maritime law.[9] The jurisdictional statute, by contrast, is less sweeping. While the first Congress repeated the words in the Constitution when it conferred exclusive jurisdiction on the district courts in admiralty and maritime cases, it added a savings clause to preserve "the traditionally exercised concurrent jurisdiction of the state courts in admiralty matters."[10] Thus its concern encompassed more than just uniformity. Moreover, however the first Congress may have viewed this jurisdictional statute, the 80th Congress in revising the Judicial Code cannot have considered § 1333 the exclusive basis for federal admiralty and maritime jurisdiction. Six days before the Judicial Code was enacted Congress passed the Extension of Admiralty Jurisdiction Act.[11] This statute, which overruled *The Plymouth*[12] and expanded the admiralty jurisdiction to encompass injuries done by vessels to land structures, was codified not to § 1333 but to 46 U.S.C. § 740.[13] Congress thus did not consider § 1333 as exhausting the constitutional admiralty and maritime jurisdiction. Like other jurisdictional statutes, § 1333 may therefore be strictly construed, so long as the purposes that underlay its enactment are not thwarted. "It is a statute, not a Constitution, we are expounding."[14]

These purposes have already been suggested. The first Congress created the district courts and gave them exclusive jurisdiction in admiralty cases to permit them to oversee the uniform development of maritime law.[15] At the same time, it recognized that uniformity is not essential in all cases technically within the admiralty and maritime jurisdiction; it therefore provided that cases traditionally litigable under the common law might be tried, at the option of the claimant, in either forum. Uniformity is desirable where the litigation and the issues to be resolved are related in some fashion to maritime transportation, the industry whose special problems created a need for a specialized branch of the law.[16] Disputes like the present one, which is only incidentally related to navigable waters and wholly unconnected with maritime commerce, can be litigated in state courts under the diverse rules of state law without affecting maritime endeavors. The basis for the special grant of admiralty jurisdiction is absent here.

8. Cf. Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (construing 28 U.S.C. § 1331, the federal question statute); Haynes v. Felder, 239 F.2d 868 (5th Cir. 1957) (construing the diversity clause in the Constitution), cited with approval in State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). See generally 1 Moore, supra, note 7, ¶ 0.60 [2], at 606–07.

9. Panama R. R. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924); The Lottawanna, 21 Wall. (88 U.S.) 558, 22 L.Ed. 654 (1874); see Romero, supra note 8, at 360–361, 79 S.Ct. 468.

10. Romero, supra note 8, at 372, 79 S.Ct. at 480.

11. The Judicial Code was § 1 of the Act of June 25, 1948, ch. 646, 62 Stat. 869. The Extension of Admiralty Jurisdiction Act was the Act of June 19, 1948, ch. 526, 62 Stat. 496.

12. 3 Wall. (70 U.S.) 20, 18 L.Ed. 125 (1865).

13. Other statutes granting jurisdiction to the district courts in admiralty or maritime matters appear in the Longshoremen's and Harbor Workers' Compensation Act, at 33 U.S.C. § 921(b); in the Death on the High Seas Act, at 46 U.S.C. § 761; and in the Ship Mortgage Act, at 46 U.S.C. § 951.

14. Frankfurter, J., in Romero, supra note 8, at 379, 79 S.Ct. at 484 (referring to 28 U.S.C. § 1331, which grants federal question jurisdiction in terms as broad as the admiralty grant in § 1333).

15. 1 Benedict, supra note 2, § 1 & cases cited n. 2.

16. See Gilmore & Black, supra note 2, § 1–5, at 11; id. § 1–10, at 27.

■ Thus it is appropriate to restrict the scope of § 1333 by requiring a maritime connection. Because cases lacking such a connection are outside the purpose of the statute, the statute should be strictly construed to exclude them.

The case law is not inconsistent with the above conclusion. The cases in which jurisdiction was declined because the tort occurred on land [17] are distinguishable, for they involve the converse of the strict locality test at issue here. In other cases, the court has invoked the strict locality test although the dispute before it was manifestly related to maritime activities.[18] Such decisions are weak authority for a strict locality test. In several recent cases the court has purported to rely on the strict locality test, but then proceeded to find some relation between the claim before it and maritime commerce or navigation.[19] Whenever a court has expressly found such a relation to be absent, it has dismissed the case for want of jurisdiction.[20]

Two other considerations suggest that from the standpoint of judicial administration it is wise to reject the strict locality standard of admiralty jurisdiction. It is an arbitrary standard, often honored in its breach where to apply it would be to restrict the admiralty jurisdiction. Long ago maritime contracts were excepted from the strict locality rules that crippled the English admiralty; for at least 150 years the admiralty contract jurisdiction has been a function not of locality, but of the maritime nature of the subject matter of the contract.[21] Similarly, the admiralty has entertained suits over torts that occurred on land but were clearly related to maritime commerce or navigation.[22] On both of these fronts the admiralty jurisdiction has expanded landward to include many maritime matters that did not wholly arise on navigable waters. Requiring a maritime connection in all tort cases would complement these trends by making the jurisdictional issue simpler to resolve and by making the resolution less arbitrary.

If the presence of a maritime connection becomes both a necessary and a sufficient condition for invoking the admiralty jurisdiction, the existence of jurisdiction will be fairly predictable and relatively easy to determine. Such "empty distinctions" [23] as whether a quasi-contractual claim sounds more in tort than in contract,[24] whether a tort was consummated on land or in the water,[25]

---

17. E. g., State Industrial Comm'n of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1922); The Plymouth, 3 Wall. (70 U.S.) 20, 18 L.Ed. 125 (1865); David Crystal, Inc. v. Cunard Steam-Ship Co., 223 F.Supp. 273, 290 (S.D.N.Y.1963), aff'd on other grounds, 339 F.2d 295 (2d Cir. 1964), cert. denied, 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965).

18. The Sixth Circuit recently observed that "the vast majority" of cases in which the strict locality test is invoked fall in this class. Chapman v. City of Grosse Pointe Farms, 385 F.2d 962, 966 (6th Cir. 1967).

19. The paradigm here is Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963), often cited by those espousing the strict locality test as a leading decision. See 316 F.2d at 763, where the court concludes that a "maritime nexus" exists. See also, e. g., Davis v. City of Jacksonville Beach, 251 F.Supp. 327 (M.D.Fla.1965).

20. Cases cited note 3 supra.

21. Insurance Co. v. Dunham, 11 Wall. (78 U.S.) 1, 26–36 (1871). See generally 1 Benedict, supra note 2, §§ 62–70.

22. E. g., Holland v. Harrison Bros. Dry Dock & Repair Yard, Inc., 306 F.2d 369 (5th Cir.), modified per curiam on rehearing, 308 F.2d 570 (5th Cir. 1962); United States v. Matson Nav. Co., 201 F.2d 610 (9th Cir. 1953); Castillo v. Argonaut Trading Agency, Inc., 156 F. Supp. 398 (S.D.N.Y.1957).

23. See Hastings v. Mann, 340 F.2d 910, 912 (4th Cir.), cert. denied, 380 U.S. 963, 85 S.Ct. 1106, 14 L.Ed.2d 153 (1965).

24. See generally Gilmore & Black, supra note 2, at 25–26 n. 94.

25. See, e. g., Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555 (D. Md.1965).

and whether an object attached to the ocean floor is an extension of land or an aid to navigation [26] will no longer be before the court. The jurisdictional issue will be confined to determining whether the claim is maritime. While this may at times prove difficult,[27] the court may refer to the purposes for which the federal admiralty and maritime jurisdiction was created. Difficult distinctions cannot be avoided if the admiralty jurisdiction is to be kept within its proper bounds,[28] but irrelevant and complex distinctions should be discarded in favor of useful and straightforward ones.

Moreover, an admiralty jurisdiction that depended entirely on the existence of a maritime connection would enable parties to try all facets of a single controversy in a single lawsuit. Under present law this cannot be done. In related tort and contract claims, for example, a single issue, negligence, is often fundamental to the proof of both causes of action. Yet if tort jurisdiction is a function of locality, but contract jurisdiction is a function of the maritime nature of the subject matter, both claims cannot be tried in a single forum. Thus in Weinstein v. Eastern Airlines, Inc.,[29] a case arising out of an airplane crash, the Third Circuit felt it should retain jurisdiction of the tort claims but dismiss the claims for breach of contract. The incident that gave rise to the instant case also illustrates the irrationality of present law. The complaint is for damage to a forklift that was dropped into the water when the boom on a crane collapsed. Defendant has cross-complained for the damage to its crane, which was on the dock at the time of the collapse. Under the purest form of the strict locality rules, the complaint would fall inside, but the cross-complaint outside the admiralty jurisdiction.[30] This, though both claims arose out of the identical transaction. It was to eliminate such an anomaly that the Extension of Admiralty Jurisdiction Act was enacted.[31] A jurisdictional standard that dissects one controversy into a number of lawsuits is inefficient and wasteful. It is poor judicial administration.[32]

The Court anticipates that uniform adoption of the maritime connection test for the admiralty jurisdiction will alleviate this situation. The same standard should be applied to determine jurisdiction over all claims arising out of a single transaction. That standard should be the maritime connection test, if only because it is likely to produce the same result with respect to all related claims; seldom will a party be able to demonstrate both that his claim is related to maritime commerce or navigation and that another related claim is not. This should curtail piecemeal litigation.

█ For all the above reasons this action should be dismissed. Counsel for defendant shall submit an appropriate order.

26. See The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L.Ed. 236 (1904).

27. See, e. g., King v. Testerman, 214 F. Supp. 335 (E.D.Tenn.1963).

28. Cf. Gilmore & Black, supra note 2, at 26–27.

29. 316 F.2d 758 (3d Cir.), cert. denied, 375 U.S. 940, 84 S.Ct. 343, 11 L.Ed.2d 271 (1963).

30. As to jurisdiction of the complaint, see Wiper v. Great Lakes Eng'r Works, 340 F.2d 727 (6th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965) (a choice-of-law case that relies on jurisdiction cases). As to lack of jurisdiction over the cross-complaint, see The Plymouth, 3 Wall. (70 U.S.) 20, 18 L.Ed.2d 125 (1865); Thomson v. Chesapeake Yacht Club, Inc., 255 F. Supp. 555 (D.Md.1965). The distinction lies in the fact that the forklift suffered no injury until it struck the water, but the crane was damaged when the boom collapsed, which was before any part of the crane fell into the harbor.

31. See 1948–2 U.S.Code Cong.Serv. pp. 1898, 1899.

32. Cf. 5 J.Moore, Federal Practice ¶ 38.35 [4], at 283–85 (1951).