**John L. PEYTAVIN, Plaintiff-Appellant,**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Defendants-Appellees.**

No. 71-2225

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1972.

---

* ■ Rule 18, 5th Cir. See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Lloyd R. Himel, Martin, Himel & Peytavin, Lutcher, La., for plaintiff-appellant.

Frank B. Hayne, III, Hammett, Leake & Hammett, New Orleans, La., for defendants-appellees.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Unable to demonstrate diversity jurisdiction, this plaintiff-appellant nevertheless seeks to sue in federal court for whiplash injuries sustained in a rear-end car collision by invoking the district court's admiralty jurisdiction under a claim that the defendant's conduct amounted to a maritime tort. In his complaint, John L. Peytavin alleged that he was parked on a floating pontoon at a ferry landing in the Mississippi River waiting in line to obtain a ticket to board the ferry when his car was struck from the rear by a car operated by Mrs. Eva Bourgeois Dufresne. After a hearing on the defendant's motion to dismiss, the court entered an order finding that the floating pontoon on which the accident occurred was an extension of land and dismissing the suit for lack of admiralty jurisdiction. We concur in the court's judgment, although for different reasons, and affirm.[1]

This court is aware that the outer edge of admiralty tort jurisdiction has not been charted with precision and that the seaward boundary has fluctuated, as do all waterlines, subject to the ebb and flow tides of judicial opinion.[2]

Admiralty tort jurisdiction has as its foundation the "strict locality" rule of The Plymouth, 3 Wall 20, 70 U.S. 20, 18 L.Ed. 125 (1866). There the Supreme Court held that admiralty had no jurisdiction of a claim for damages to a wharf by a fire which had started upon a ship and then spread to the shore. The Court found that the jurisdiction of

---

1. The district court observed and Peytavin acknowledges that he is presently pursuing his state court remedies arising from this same occurrence.

2. No attempt is made here to exhaustively catalogue or compare the various factual situations and the conflicting results achieved by the courts which have considered the question over the past 100 years. A sufficient sampling may be obtained by examining 1 Benedict, The Law of American Admiralty, §§ 127–29 (6th ed. A. Kanuth 1940); Annot. 7 A.L.R.Fed. 502 at 505–09 (1971).

admiralty over maritime tort depends upon locality. However in applying this rule the Court focused narrowly on the location where the damages were inflicted:

> [T]he wrong and injury complained of must have been committed wholly upon the high seas of navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within admiralty jurisdiction. 70 U. S. at 35, 18 L.Ed. at 128.

Because the damage had been inflicted upon land, even though from a clearly maritime source, the Court held the claim was not within admiralty jurisdiction.

This "strict locality rule" has been gradually enfeebled by no less than four modifications or exceptions—two of which have served to expand, and two of which have served to contract admiralty jurisdiction.

At least a crevice developed in the staunch wall of "strict liability" when Mr. Justice Holmes wrote the opinion in The Blackheath, 195 U.S. 361, 25 S.Ct. 46, 49 L.Ed. 236 (1904). The Court held that a claim for damage caused by a ship to a channel light built on piles driven in Mobile Bay was within the court's admiralty jurisdiction, even though the light was realty and not part of the navigable waters. In distinguishing The Plymouth he said:

> (In that case) there was nothing maritime in the nature of the tort for which the vessel was attached. The fact that the fire originated on a vessel gave no character to the result . . . Moreover, the damage was done wholly upon the mainland. 195 U.S. at 367, 25 S.Ct. 46, 48, 49 L.Ed. at 238.

This case gave rise to a general exception for damage to fixed navigational aid structures.[3]

In 1948 the 80th Congress radically altered the strict locality rule of The Plymouth by adopting the Admiralty Extension Act which directed:

> The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land. 46 U.S.C. § 740.

The effect of this act was to reverse the result reached by the Court in The Plymouth.

However, this expansion of admiralty jurisdiction was attended by two doctrines which were applied to constrict the scope of admiralty tort jurisdiction. The first was the "extension of land" doctrine, by which the strict locality requirement that the injury be inflicted upon navigable waters was construed to eliminate from maritime jurisdiction injuries sustained on piers, jetties, bridges, or even ramps or railways running into the sea. T. Smith & Son, Inc. v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L. Ed. 520 (1928).[4] The second constructive doctrine was the requirement made by some courts that in addition to sustaining injury in a maritime location, the tort must have a "maritime connection." For example, courts have denied maritime jurisdiction of claims arising from alleged injuries to a swimmer who dived off a pier into 18 inches of "navigable water." Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967).[5]

3. The Raithmoor, 241 U.S. 166, 36 S.Ct. 514, 60 L.Ed. 937 (1915). 1 Benedict, supra note 2, § 129.

4. See Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352 at 360, 89 S.Ct. 1835, 23 L.Ed.2d 360 at 366 (1969). See also Chevron Oil Co. v. Huson, 404 U.S.

97, 92 S.Ct. 349, 30 L.Ed.2d 296 (Dec. 6, 1971). 1 Benedict, supra note 2, § 128a.

5. The question of whether something more than location might also be required was apparently raised by the Supreme Court in Atlantic Transport Co. of W. Va. v.

With such a plethora of rules to choose from, it is not surprising that courts have varied in their views as to the metaphysics of precisely where an injury was sustained or whether a particular structure was "an extension of the land."[6] There has also been difficulty in distinguishing between matters going to the jurisdiction and those determining the merits or the applicable law. Grant Smith-Porter Ship Co. v. Rohde, 257 U.S. 469, 477, 42 S.Ct. 157, 66 L.Ed. 321, 325 (1922).[7] In *Rohde* the Court held that admiralty had *jurisdiction* of a tort committed on a vessel in the process of construction when lying on navigable waters. But the Court held that in the circumstances, where neither Rohde's general employment as a carpenter, nor his activities at the time of the accident had any direct relation to navigation or commerce, the Oregon Workmen's Compensation Act would apply and abrogate the right to recover damages in an admiralty court which would otherwise exist.

Here the parties contracted with reference to the state statute; their rights and liabilities had no direct relation to navigation, and the application of the local law cannot materially affect any rules of the sea whose uniformity is essential. 257 U.S. at 477, 42 S.Ct. at 158, 66 L.Ed. at 325.

However in Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935) where a longshoreman was injured by a cargo sling while standing on the deck of a vessel the court held that admiralty had jurisdiction of the claim and because the employee was injured upon navigable waters while engaged in a maritime service, the claim was to be governed by maritime law. 295 U.S. at 648–649, 55 S.Ct. 884, 79 L.Ed. at 1632.

More recently in Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Supreme Court held that the Death on the High Seas Act did not apply to accidents occurring on artificial island drilling rigs located on the outer Continental Shelf off the Louisiana coast. The Court held that these islands were instead governed by the Outer Continental Shelf Lands Act[8] which provided that state law remedies which are not inconsistent with other federal law should be applied. In concluding that the Seas Act should not apply to prevent application of the state law remedies,

Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914) where the Court stated:

> If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation, and to commerce on navigable waters, was quite sufficient. 234 U.S. at 62, 34 S.Ct. at 735, 58 L.Ed. at 1213.

*See also* Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970); McGuire v. New York, 192 F.Supp. 866 (S.D.N.Y. 1961).

6. *Compare* T. Smith & Son v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928) [longshoreman unloading vessel standing on a stage that rested solely on wharf, struck by cargo sling and knocked into the water—held not within admiralty jurisdiction] *with* Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935) [longshoreman unloading vessel standing on the deck of the vessel, struck by cargo sling and knocked onto the wharf—held within admiralty jurisdiction].

> If, when the blow from a swinging crane knocks a longshoreman from the dock into the water, the cause of action arises on the land, it must follow upon the same reasoning, that when he is struck upon the vessel and the blow throws him upon the dock the cause of action arises on the vessel. 295 U.S. at 649, 55 S.Ct. at 885, 79 L.Ed. at 1632.

*and* The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935) [passenger who fell from gang-plank connecting vessel and dock could sue in admiralty because gang-plank was part of the vessel and not the land.]

7. The persistence of the confusion as to the relative roles of state and federal law on the seaward side of the pier has been most recently recognized in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971).

8. 43 U.S.C. § 1331 et seq.

the court noted that under traditional maritime law, there would be no admiralty jurisdiction because the artificial islands would be considered extensions of land, even though surrounded by navigable waters.

> The accidents in question here involved no collision with a vessel, and the structures were not navigational aids. They were islands, albeit artificial ones, and the accidents had no more connection with the ordinary stuff of admiralty than do accidents on piers . . . In these circumstances, the Seas Act—which provides an action in admiralty—clearly would not apply under conventional admiralty principles and, since the Lands Act provides an alternative federal remedy through adopted state law, there is no reason to assume that Congress intended to extend those principles to create an admiralty remedy here. 395 U.S. at 360–361, 89 S. Ct. at 1839, 23 L.Ed.2d at 367.

Attempts to apply these traditional principles of admiralty jurisdiction to the present case illustrate the difficulty presented by the present maze rules. The essential facts are undisputed. Peytavin's verified complaint alleges that the Dufresne vehicle proceeded down the ferry ramp and the impact with the plaintiff's car occurred on the east bank Lutcher ferry pontoon. The floating pontoon was used for loading and unloading the ferry; it was securely fastened to the shore by means of two cables.[9]

The district court concluded that the pontoon was an extension of land because it was not a vessel and it was secured to the shore and functioning as a dock or road-way. The court relied on Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926) [holding a wharfboat used to transfer freight between steamboats and land, and secured to the shore by four or five cables was not a vessel for purposes of limitation of liability.] and on the Court's earlier opinion in Cookmeyer v. Louisiana Dept. of Highways, 309 F.Supp. 881 (E.D.La.1970), aff'd per curiam 433 F. 2d 386 (5th Cir. 1970) [holding a motorcycle accident on a bridge not to be within admiralty jurisdiction]. The court in the instant case indicated that it was significant that the floating pontoon performed no function that might not have been performed as well by an appropriate structure on the land. The court found "little difference between this ferry pontoon and piers or wharves extending over navigable waters which are designed and used for providing access to vessels afloat for people and land based vehicles and equipment."

While we agree with the district court that this automobile accident is not subject to admiralty jurisdiction, we do not think this holding is properly reached simply by categorizing a floating pontoon held in place by two cables as an "extension of land." Certainly the performance of the pontoon tends to make it a "functional" extension of land. But the common characteristics of the "extension of land" cases have been that the structures involved did not float on the water and were in some manner firmly and permanently fastened to the land.[10] Hastings v. Mann, 340 F.2d 910

---

9. The district court asserted that at oral argument it was undisputed that at the time of the accident the pontoon was not floating free; the cables, however, could be loosened or tightened to adjust to the rise and fall of the river.

10. E. g., piers, bridges and wharves. *See* Nacirema Operating Co. v. Johnson, 396 U.S. 212, 215, 90 S.Ct. 347, 24 L.Ed.2d 371, 375 n. 5, 6 (1969) ; Evans v. Louisiana Dept. of Highways, 430 F.2d 1280 (5th Cir. 1970). Perhaps the closest case for holding this floating pontoon to be an extension of land is the district court's earlier decision in Cookmeyer v. Louisiana Dept. of Highways, 309 F.Supp. 881 (E.D.La.1970), aff'd per curiam, 433 F.2d 386 (5th Cir. 1970). It was there held that a pontoon bridge assembly on which a motorcycle accident occurred was an extension of land. But the court noted the only portions of the bridge which were not firmly attached to the shore were two barges attached to one of two clusters of pilings by a solidly con-

(4th Cir. 1965), cited by the court, held that a ramp used for launching small boats, upon which a man fell while in the water, was an extension of the land. The court noted that no portion of the ramp was afloat, for the underwater portion of the launching ramp was securely fastened to the bottom. Stating the rule, the court said:

> To come within the land extension rule, of course, the structure must be *firmly attached to the land.* A vessel moored to a dock does not become an extension of the land *nor do other structures secured to the shore by cables, or other temporary means.* 340 F.2d at 911. (emphasis added)

It would seem to stretch the analysis almost to the point of distortion to indicate that because the pontoon here performed no function that could not have been performed as well by a structure firmly and fixedly attached to the land, that the floating pontoon is therefore an "extension of the land." For that matter, the entire ferry boat operation across the Mississippi River could have been performed as well by a bridge spanning from one shore to the other. But merely because one could choose to take the bridge instead of the ferry would not deprive the court of admiralty jurisdiction if the ferry sank in the middle of the river.

Having thus rejected the district court's use of the "extension of land" doctrine as the exclusive basis for lack of admiralty jurisdiction in this case, this court must grapple with the other jurisdictional doctrines. Application of the "strict locality" test fails to provide any clear guidance because the rule is only as precise as the court's ability to determine "the location." It does appear here that the injury was sustained on the pontoon, and hence in navigable waters. It is not clear that the wrong, i. e., the negligent operation of the Dufresne automobile, occurred on navigable waters.[11] Certainly no claim of admiralty jurisdiction has been, or could be, made on the basis that this pontoon was a navigational aid. *The Blacksmith, supra.* Finally, application of the "location plus maritime connection" test of Chapman v. City of Grosse Pointe Farms,[12] *supra* yields the combined confusion of the strict location test and the question of what is sufficient minimum maritime connection.[13] The circumstances of the injury here do demonstrate some minimum maritime connection. Both parties were engaged in the use of the facilities which are connected with maritime commerce at the time of the accident. But neither the parties, nor the nature or the apparent cause of the accident, nor the injury sustained

---

nected steel pivot arm. These barges containing a portion of the bridge roadway, could be pulled into and out of the channel around the fixed pivot point by two cables.

11. The complaint alleges, in part, that the defendant failed to have her vehicle under control, failed to maintain a proper lookout, failed to exercise due care, failed to stop, and failed to turn aside to avoid the plaintiff's vehicle. Some of the allegedly negligent conduct could have occurred on the floating pontoon and some of it could have occurred on the shore as she was approaching the pontoon.

12. And as advocated in Smith v. Guerrant, 290 F.Supp. 111 (S.D.Tex.1968), and discussed in Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970).

13. Those cases which have demanded some maritime connection . . . have demanded only a minimum. They have refused to assume admiralty jurisdiction in cases involving swimmers, a person falling off a dock, a crane breaking and dropping a lift-truck into the water. f. n. 12, Watz, 431 F.2d at 111. *See also* Davis v. City of Jacksonville Beach, Fla., 251 F.Supp. 327 (M.D.Fla. 1965) finding location and sufficient maritime connection where a swimmer was struck by a surf board.

> . . . [A] surfboard, by its very nature, operates almost exclusively on the high seas and navigable waters, and just like a small canoe or raft, potentially can interfere with trade and commerce. For this reason, admiralty should develop the rules of liability relating to a surfboard's operation. 251 F.Supp. at 328.

demonstrates any further connection with maritime activities or interests.

■ ■ Admiralty jurisdiction in the federal courts was predicated upon the need for a uniform development of the law governing the maritime industries.[14] In view of the metamorphosis which the traditional maritime tort jurisdictional rule has undergone since *The Plymouth* sailed over one hundred years ago and the difficulty in applying its modern-day progeny to the facts of this case, we find it appropriate to note that in general the courts have denied maritime tort jurisdiction where the circumstances of a suit fail to demonstrate any substantial connection with maritime activities or interests.

Peytavin urges in support of admiralty jurisdiction this court's earlier decision in Byrd v. Napolean Ave. Ferry, 227 F.2d 958 (5th Cir. 1955) aff'd per curiam, 125 F.Supp. 573 ED La.1954). A comparison of the differences between the two cases illustrates the absence of substantial connection with maritime activities or interests in the present suit. In *Byrd* the plaintiff sued the operator of a similar Mississippi ferry for personal injuries and for the wrongful death of her husband when their car careened off of the ferry, across a similar floating pontoon barge and into the river. The court acting within its admiralty jurisdiction held that general maritime law would apply to the plaintiff's injuries, but that the claim for wrongful death would be governed by state law.

In the first instance the activities of the parties in *Byrd* were more substantially connected with maritime activities than those of the parties here. The plaintiff was a passenger aboard a commercial ferry boat. The defendant was the operator of a commercial ferry boat. Here both parties were passengers waiting to board the ferry. Moreover, there was a more substantial connection with maritime activities in the relationship between the parties in *Byrd*, i. e., passenger—ferry operator, than here, i. e., passenger—passenger. In *Byrd* the causes of the injury, the negligence of the ferry operator and the unseaworthiness of the vessel, were more substantially connected to maritime activities than the alleged failure of Mrs. Dufresne to keep her automobile under control and maintain a proper lookout. The pontoon barge location where the injuries were sustained is approximately the same in both cases, although in *Byrd* the sequence of causal events started on board the ferry and ended in the Mississippi whereas the events here began on the riverbank. Finally the nature of the damages sustained, in addition to being more severe, were also more closely connected with maritime activities in *Byrd*. In the present case the plaintiff suffered a whiplash neck and back injury in a rear-end car collision. In *Byrd* the plaintiff suffered, in addition to a back injury, "the horror of being pulled, drowning, out of the river only to learn that her husband had not been saved."

■ This court considers these factors to offer some practical guidance in determining whether a claim for tort damages is properly within the jurisdiction of admiralty. Having examined the facts and circumstances of Peytavin's claim we find that it lacks substantial connection with maritime activities or interests. The plaintiff has failed to meet the burden imposed by F.R.Civ.P. 8(a) (1) to affirmatively show that the court has jurisdiction of his claim. Indeed the allegations of this sworn complaint negate the court's jurisdiction. Accordingly, the judgment of the district court finding that this claim is not within the jurisdiction of admiralty is affirmed.

---

14. Benedict, supra note 2, § 1 and cases cited n. 2 at p. 1. See also the scholarly discussion of Judge Noel in Smith v. Guerrant, 290 F.Supp. 111 (S.D.Tex. 1968).