Malcolm H. JILES

v.

FEDERAL BARGE LINES, INC.

v.

A–1 TEMPORARY HELP SERVICE CO., INC.

Civ. A. No. 73–62.

United States District Court,
E. D. Louisiana.

Sept. 13, 1973.

13. Report, 52.

Frank E. Lamothe, III of Martzell & Montero, New Orleans, La., for plaintiff.

Gothard J. Reck, of Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, New Orleans, La., Philippi P. St. Pee, of Francipane, Regan & St. Pee, Metairie, La., for defendants.

CHRISTENBERRY, District Judge.

This case is before the Court on motion by defendant Federal Barge Lines, Inc. for dismissal of the action or alternatively for summary judgment on the grounds that plaintiff's cause of action does not lie within the admiralty jurisdiction of this Court and that as a matter of law the movant is entitled to the relief requested. This Court treats the motion as a request for summary judgment pursuant to Rule 56. The cause of action arose from injuries sustained by the plaintiff while painting a structure, formerly a steamboat known as the MV BUNA; the plaintiff was employed by A–1 Temporary Help Service Co., Inc. to do work for Federal Barge Lines, Inc. on the BUNA.

The plaintiff contends that at the time of his injury he was working aboard the structure which he alleges was a vessel in navigation, that he was performing the traditional work of a seaman and accordingly, that he has a right of action under the general maritime law against defendant Federal Barge Lines, Inc. for the injuries sustained as a result of defendant's alleged negligence and/or by the unseaworthiness of the alleged vessel. Conversely, the defendant denies the vessel status of the structure BUNA and considers it to be an extension of land. Moreover, defendant argues that there are insufficient maritime contacts in this cause of action to come within the Court's admiralty jurisdiction.

The BUNA has been stripped of its vessel status: the shafts, wheels, and rudders were removed in 1958, and the engines and boilers were removed in 1969, at which date it was moored with cables to deadmen located on shore at the foot of South Carrollton Avenue in the Mississippi River, where it does however continue to float. Furthermore, the BUNA has shore-based telephone lines, water lines and electrical connections permanently affixed to it.

The recent Fifth Circuit ruling in Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (1973), resolved a similar issue of unseaworthiness by holding that a floating construction platform, moored in navigable waters, secured to the dock by ropes and functioning as a stationary platform was not a vessel for purposes of maritime jurisdiction. The Court explained that mere flotation on water does not constitute a structure a "vessel," Cook v. Belden Concrete Products, Inc., *supra*, 472 F.2d at 1001, citing Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279, 283 (5th Cir. 1969), cert. denied, 396 U.S. 846, 90 S.Ct. 105, 24 L. Ed.2d 96 (1969). The Fifth Circuit further held that it was not a vessel in navigation even though it was in fact occasionally moved to pick up materials or launch barges; the Court focused on the business in which the structure was engaged, the actual function, and use or status of the craft at the time of the injury. Similarly, after examining the nature of the BUNA's function and stat-

us this Court determines, as a matter of law, that this structure is no longer functioning as a vessel in navigation, even though it was originally "designed for transportation of passengers, cargo, or equipment . . . across navigable waters," Cook v. Belden Concrete Products, Inc., *supra*, 472 F.2d at 1002. The status of the BUNA is that of a building or immovable structure which is utilized as an office of Federal Barge Lines, Inc. as stated by affiant Walter Coffman, district manager of the defendant company. Hence, it is a " 'functional' extension of land," as was the pontoon bridge in Peytavin v. Government Employees Insurance Co., 453 F.2d 1121, 1125 (5th Cir. 1972), rather than a vessel and as such fails to invoke the maritime jurisdiction for the claim of unseaworthiness.

Determination of the BUNA as an "extension of land" does not of necessity follow from the finding that it is not a "vessel." There is a paucity of direct authority on this question. The plaintiff relies on Peytavin v. Government Employees Insurance Co., *supra*, 453 F. 2d at 1125–1126, citing Hastings v. Mann, 340 F.2d 910, 911 (4th Cir. 1965), to argue that the common characteristics of the extension of land cases have been that the structure does not float on water and that it must be permanently and firmly attached to the land, not merely moored to the dock or secured to the shore by cables. The *Peytavin* court refused to categorize a floating pontoon bridge held in place by merely two cables as an extension of land, although it did deny admiralty jurisdiction to the action due to a lack of sufficient maritime contacts.

The Fifth Circuit in Cook, *supra*, while denying that a floating construction platform was a vessel, did not go so far as to find that the platform was an extension of land. Earlier, in the *Peytavin* decision, the Fifth Circuit refused to hold that a floating pontoon at a ferry landing was an extension of land simply because it was not a vessel and "performed no function that could not have been performed as well by a structure

firmly and fixedly attached to the land," 453 F.2d at 1126. However, in Cookmeyer v. Louisiana Department of Highways, 309 F.Supp. 881 (E.D.La.1970), aff'd, 433 F.2d 386 (5th Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332 (1971), a pontoon was found to be a bridge, *i. e.*, an extension of land, and therefore not a vessel. The accident occurred when the pontoon was performing a function ancillary to its primary function: the bridge pontoons were turned on their pivots to allow water traffic to pass. The *Cookmeyer* court relied on the nature, purpose and character of the structure at the time of the accident to determine its status.

■ In summary, the Fifth Circuit jurisprudence reflects a staunch reluctance and refusal to hold that a structure is an extension of land merely as a result of the finding that it is not a vessel. However, there is little reluctance to hold the converse, that a structure which is found to be an extension of land is therefore not a vessel.

This Court is now confronted with the issue of whether the plaintiff's claim for negligence, as a general maritime tort claim can be maintained in a situation where the alleged tort occurred on a structure afloat on navigable waters, not suitably categorized as a "vessel," and, simultaneously, not clearly found to be an "extension of land." In determining whether this negligence claim invokes admiralty jurisdiction, the locality test and the maritime connexity test must be satisfied.

■ For the purpose of meeting the locality test, *i. e.*, showing that the tort occurred on navigable waters, The Genesse Chief v. Fitzhugh, 53 U.S. (12 How.) 443, 13 L.Ed. 1058 (1851), The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865), the structure BUNA is considered to have been afloat on navigable waters at the time of the alleged tort— although this Court has already found that the structure BUNA is not a vessel.

As recently expounded by the Supreme Court in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.

Ct. 493, 34 L.Ed.2d 454 (1972), merely satisfying the locality test is not sufficient to invoke maritime jurisdiction. An additional test requires a finding of maritime contacts which constitute a significant relationship between the tort and traditional maritime activity. More specifically, the tort must be of a maritime nature and there must be a relationship between the wrong and some maritime service, navigation, or commerce on navigable waters. Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967).

In Gowdy v. United States, 412 F.2d 525 (6th Cir. 1969), admiralty jurisdiction was deemed not properly invoked because the tort, while having a maritime locality, lacked the sufficient relationship to maritime activity. In Gowdy the wrong, if any, involved the failure of a landowner to provide a guardrail or some type of warning for business invitees using the lighthouse property. The invitees were an electrical construction company and its employees engaged in the installation of new machinery. The company was not a maritime contractor, and its employees were not seamen, longshoremen or harbor workers. Accordingly, the Gowdy court found no sufficient maritime contacts and denied federal admiralty jurisdiction.

In the present case the alleged wrong was the negligence of defendant Federal Barge Lines, Inc. in having provided an unsafe ladder on which to work. This Court refrains from considering the merits of the allegations by the defendant of the plaintiff's contributory negligence The plaintiff was an employee of a third party, A–1 Temporary Help Service Co., Inc., who was assigned to paint the outside of defendant's structure, the BUNA. As in Gowdy, the employer, A–1 Temporary Help Service Co., Inc., was not a maritime contractor and its employees were neither seamen, longshoremen nor harbor workers.

The court in Gowdy further held that the fact that the lighthouse itself serves a maritime purpose was insufficient to require the application of maritime law. Similarly, plaintiff in the instant case urges admiralty jurisdiction because the tort occurred on a structure, the facilities of which are connected with maritime navigation and commerce. In support of this plaintiff states that the BUNA serves as a storage area for equipment and as an eating and resting place for the workmen of the barge fleet, or in short, as a place for worker deployment. Clearly, since the maritime purpose served by the lighthouse was insufficient to invoke admiralty jurisdiction in Gowdy, the slight maritime related purposes of the BUNA alleged here are simply too tenuous.

Moreover, plaintiff contends in his affidavit that he was engaged in activities which were in furtherance of traditional maritime interests, the operation of a barge fleet. This Court disagrees and finds that plaintiff was merely performing the work of a painter and that this work performed on the BUNA achieved nothing in direct furtherance of the operation of a barge fleet.

The Fifth Circuit in Peytavin v. Government Employees Insurance Co., supra, established criteria for finding the sufficient maritime contacts in a personal injury case to sustain admiralty jurisdiction. Peytavin considered the activities and relationships of the parties. As previously stated, the activity of plaintiff was that of painting a non-navigable structure; the activity of defendant was that of mere utilization, not ownership, of the structure; the fact that defendant was owner of a barge fleet has no significance to its relationship with this plaintiff painter who was employed by a third party.

Another criterion utilized by the Fifth Circuit was consideration of the cause of the injuries sustained. In the instant case this criterion also is non-maritime related: as alleged, plaintiff was injured when the ladder on which he was standing while painting slipped and caused him to fall onto the steel flooring.

The final criterion to be applied concerns the nature of the damages sustained which in *Peytavin* was related to the waters into which plaintiff fell and in which plaintiff's husband drowned. However, in the instant case plaintiff was injured when he fell onto the steel floor of a non-navigable structure; this criterion, while perhaps maritime related in *Peytavin*, in no way establishes the requisite maritime connexity with plaintiff Jiles' injuries.

After applying these recommended criteria and the relevant case law it is readily apparent that there are insufficient maritime contacts between the alleged wrong and traditional maritime activity to incur admiralty jurisdiction over this tort for negligence. Moreover, the relatively indisputed material facts indicate that, as a matter of law, the BUNA was not a vessel within the scope of the general maritime law.

Accordingly, this Court hereby grants defendant's motion for summary judgment.