365 So.2d 541 (1978)
Dewey MYERS, Plaintiff-Appellant,
v.
HOWELL ELECTRIC MOTORS COMPANY et al. (Butler International, Inc.), Defendant-Appellee.
No. 6719.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1978.
Rehearing Denied January 10, 1979.
Writ Refused February 23, 1979.
Edwards, Stefanski & Barousse, J. Mike Stefanski, Crowley, La., for plaintiff-appellant.
Allen, Gooch & Bourgeois, Keith M. Borne, Lafayette, Ronald R. Thompson, Baton Rouge, Davidson, Meaux, Sonnier & Roy, J. J. Davidson, III, Lafayette, for defendant-appellee.
Before GUIDRY, FORET and CUTRER, JJ.
CUTRER, Judge.
Dewey Myers made a claim under the Jones Act and the question before us is whether a pontoon bridge is a "vessel." The trial court granted a motion for summary judgment, finding the bridge was not a "vessel" but was "an extension of land" and was not "in navigation." The plaintiff has appealed.
The facts are not in dispute. The plaintiff was employed by the Louisiana Department of Transportation and Development as a bridge tender on the Estherwood Pontoon Bridge which crosses Bayou Plaquemine in Acadia Parish. The structure was in three sections: a north section, a south section, and a middle section. The north and south sections were attached to pilings, thus being permanent structures. These two sections did not move. The middle section was a barge-type structure which was permanently attached to the south section by a pivotal mechanism. The middle section would pivot to the west to allow marine traffic to pass. This section was pivoted by means of a cable system attached to two "drums" operated by an electric motor. The bridge tender's room from which he operated the mechanism to open and close the bridge was located on the south side of the river and next to the southern structure. This room and the equipment were installed on a concrete foundation.
There were devices called "aprons" on the north and south sections of this structure. *542 The purpose of these devices was to hold the middle section in place when it was placed between the north and south sections; also, the aprons provided a passage for vehicular traffic to travel onto the middle section. Each apron contained a locking system which locked when the middle section was closed. On the day of the accident (May 8, 1975) plaintiff alleges that the water was exceptionally high and there existed a strong current. Plaintiff also claims that he was attempting to open the structure to allow marine traffic to pass. After he lifted the aprons the current pushed the middle section open. The plaintiff attempted to hold the clutch of the gear system against the force of the current to prevent the middle section from swinging. As he did this, the clutch jerked the plaintiff and he alleges that he thereby sustained injuries.
Plaintiff sued Howell Electric Motors Company[1] (hereinafter referred to as Butler International). Butler International was the alleged manufacturer of the electric motor that controlled the gear system on the structure. The plaintiff also sued the State of Louisiana through the Department of Transportation and Development and its insurer, Houston General Insurance Company. Houston General filed a motion for summary judgment, and it was signed on March 29, 1978. Butler International also filed a motion for summary judgment and it was signed on April 5, 1978. The plaintiff has appealed the March 29, 1978 (Houston General) judgment only. The plaintiff filed his claim under the Jones Act, contending the pontoon was a "vessel" and as an operator thereof, he was a seaman. The Louisiana Department of Transportation and its insurer, Houston General, contend the structure was not a "vessel" and plaintiff is relegated to a workmen's compensation claim.
Since the plaintiff has alleged that his activities were within the admiralty jurisdiction, we look to the federal cases construing and defining "vessel" as an aid in resolving the problem. Intracoastal Liquid Mud, Inc. v. Choate, 225 So.2d 642 (La.App. 3rd Cir. 1969).
We find that the federal court classified the nature of a "pontoon bridge" in the case of Cookmeyer v. Louisiana Department of Highways, 309 F.Supp. 881 (E.D.La.1970), affirmed 433 F.2d 386, certiorari denied 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 332 (1971), rehearing denied 402 U.S. 980, 91 S.Ct. 2179, 29 L.Ed.2d 169 (1971). That structure extended Highway 47 across a Mississippi Gulf Outlet. That pontoon bridge stretched from one bank to an island in the middle of the outlet and from the island to the other bank. Thus, it had two swinging barges attached to permanent structures located on each bank and on an island in the middle of the river. In all other aspects, this structure was essentially the same as that in our present case. That court held:
"Clearly, before having become parts of the pontoon bridge assembly, each pontoon may have been a barge in navigation and, hence, a vessel of admiralty cognizance.4 However, the mere fact that a part of the bridge assembly was at a former time a vessel, or could become, by detachment and adaptation at a future time, capable of navigation, is not dispositive of the issue presented in this case. Whether the pontoon bridge is an extension of land or a vessel turns on its `nature, purpose and character'5 at the time of the accident which forms the subject matter of this suit.
4"Johnson v. C. F. Harms Co., 25 N.J.Misc. 457, 55 A.2d 165, N.J.C.C.P.; Tucker v. Branham, 151 F.2d 96 (3rd Cir. 1945).
5 Atkins v. Greenville Shipbuilding Corp., 411 F.2d 279 (5th Cir. 1969).
"The primary purpose of the pontoon bridge was to serve as a span connecting North and South shores of the Mississippi River Gulf Outlet, over which vehicular traffic might pass, pending completion of a high level bridge at an adjacent site. It was not intended to ply the navigable *543 waters of the United States, carrying goods and passengers in commerce. When the pontoons were turned on their pivots to allow water traffic to pass, they were performing a function ancillary to the primary purpose of bridging the distance between the two shores. At such times, it should be noted, the pontoons remained attached to the permanent pivot piling structure, and carried no passengers or cargo in navigation. In the light of the function or mission of this special structure,6 the assembly was a bridge and not a barge. It functioned as a bridge, and was moved through the water only when that function yielded of necessity to the requirements of the Gulf Outlet's water traffic."
6 Offshore Co. v. Robison, 266 F.2d 769, 766, 75 A.L.R.2d 1296 (5th Cir. 1959)."
The court concluded that the structure was a bridge or an extension of land and was not a "vessel."[2]
The plaintiff relies principally on the case of Peytavin v. Government Employees Insurance Co., 453 F.2d 1121 (5th Cir. 1972) to support its position that this "pontoon bridge" was a "vessel." In Peytavin, the court in affirming the trial court's granting of a motion for summary judgment, disagreed with the trial court's ruling that the floating pontoon which served as an approach to a Mississippi River ferry boat was an extension of land. The court noted that the pontoon was held to the shore only by two cables. It affirmed the trial court's ruling, however, on the basis that the claim of Peytavin "lacks substantial connection with maritime activities or interests." (Peytavin's automobile was rear-ended by another car as he was in position on the pontoon.)
The Cookmeyer case was referred to in Peytavin and distinguished.
The structure in this case was substantially the same as the structure in Cookmeyer, supra, and served a similar purpose. We thus find that the structure in question was a bridge or extension of land and cannot be classified as a "vessel" under admiralty law.
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be borne by appellant.
AFFIRMED.
NOTES
[1] Howell Electric Motors Company was sold and its name was changed to Howell International, Inc. Thereafter Howell International, Inc. changed its name to Butler Aviation, International, Inc. Subsequent to that change, the company again changed its name to Butler International, Inc.
[2] The question of whether a construction platform composed of barges was a "vessel" was very recently considered by the Fifth Circuit in the case of Leonard v. Exxon Corp., 581 F.2d 522, 1978, wherein the court held as follows:

". . . The platform consisted of four flat-deck barges. These barges were not selfpropelled, and could be moved only by the application of some external source of power. Three of the barges were placed end to end and lashed securely together. According to the trial court, this three-barge structure was moored `more or less permanently' to the shore by separate steel cables. The fourth barge which served as a crane platform and as an access ramp to the other three barges, was located between the shore and the remaining barges. This fourth barge was connected to shore by a wooden ramp. To permit the crane to service each of the three outer barges, the three-barge platform would occasionally be untied and move slightly forward or backward until properly positioned.
"This court has previously held that a similar floating construction platform, which was neither designed for navigation nor engaged in navigation at the time of the accident, was, as a matter of law, not a vessel under the Jones Act. Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir. 1973). In Cook, as in the instant case, the barges were afloat, but that fact alone was not determinative of status."