DULUTH SUPERIOR EXCURSIONS, INC., and Flamingo Excursions, Inc., Appellants,

v.

Joseph MAKELA, Appellee.

No. 79–2034.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1980.

Decided May 29, 1980.

Gene W. Halverson (on brief), Halverson, Watters, Bye, Downs & Maki, Duluth, Minn., for appellants; Jeanne M. Forneris, Duluth, Minn., on brief.

Laura S. Underkuffler (on brief), Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Duluth Superior Excursions, Inc. and Flamingo Excursions, Inc. (collectively, Excursions) brought this action in federal court seeking to limit their potential liability to Joseph Makela under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 181–189 (1976). The district court dismissed the action, holding that Excursions had failed to establish federal admiralty jurisdiction under 28 U.S.C § 1333(1) (1976). For the reasons set forth below, we con-

clude that this determination was erroneous. Accordingly, we reverse.

## I. *Background.*

On the night of August 12, 1977, Joseph Makela was struck and seriously injured by a car while crossing Harbor Drive in Duluth, Minnesota. The driver of the car was allegedly intoxicated. Both Makela and the car's driver had just disembarked from the S.S. Flamingo after a three-hour privately chartered cruise around the Duluth-Superior harbor. The organizers of the charter cruise, having advertised it as a "booze cruise," had brought several kegs of beer on board. The Flamingo was owned by appellant Flamingo Excursions, Inc., and operated by appellant Duluth Superior Excursions, Inc.

In September 1977, Makela's attorney notified Excursions that a tort claim would be filed against them. Excursions responded by filing the present action in federal court on February 10, 1978, seeking to limit their potential liability to the value of the S.S. Flamingo, her equipment, and any pending freight as of August 12, 1977. *See* 46 U.S.C. § 183(a) (1976).[1] Excursions offered an ad interim stipulation for value in the sum of $51,000, alleging that this sum exceeded the aggregate value of their interest in the vessel.

In October 1978, Makela filed a tort action in Minnesota state court, naming as defendants the driver of the car that struck him, the driver's father, the cruise organizers, and Excursions.[2] Makela's claim

against Excursions was that Excursions inadequately supervised the passengers aboard the Flamingo, who consequently became illegally intoxicated, and that Excursions failed to provide a safe means of exit for these passengers. The federal action brought by Excursions against Makela was dismissed for want of jurisdiction on November 8, 1979.

## II. *Analysis.*

In *Executive Jet Aviation v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court recounted the history of maritime tort jurisdiction. Traditionally, the test of jurisdiction was whether the tort was "located" on navigable waters. *E. g., The Plymouth,* 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1866). Because this test has proven unsatisfactory in many cases, the Court in *Executive Jet* placed its imprimatur on the more modern test of whether the alleged wrong is related to traditional maritime activity. *See id.* at 261, 93 S.Ct. at 501.[3]

In the case at hand, there is little question that the wrongs allegedly committed by Excursions took place on navigable waters.[4] The district court held, however, that Excursions failed to show the requisite relationship between these wrongs and traditional maritime activities. The district court based this holding upon its conclusion that inadequate supervision, illegal intoxication, and failure to provide a safe exit are not traditional maritime acts.

---

1. 46 U.S.C. § 183(a) provides in pertinent part as follows:

    (a) The liability of the owner of any vessel, whether American or foreign, for any * * * act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

    The district court did not reach the issue of whether this statute applies here; neither do we.

2. The parties have informed us that this lawsuit has not yet gone to trial.

3. At issue in *Executive Jet* was a claim for property damage to an airplane that crashed and sank in Lake Erie. The Court in that case held specifically that, absent either a showing of a significant relationship between the wrong and traditional maritime activity or legislation to the contrary, claims arising from airplane accidents over navigable waters are not cognizable in admiralty. *Id.* at 268, 93 S.Ct. at 504.

4. It is true, as Makela notes, that the injury he suffered was consummated on dry land. That fact, however, does not change the locale of appellants' alleged wrongs, nor does it destroy admiralty jurisdiction in this case. *See* text at note 5 *infra.*

The district court may well have been correct in this surmise. The question before the court, however, was whether these alleged acts were related to (*i. e.,* occurred in connection with) traditional maritime activities. Carrying passengers for hire is undoubtedly a traditional maritime activity, and suits in tort for personal injuries to passengers are clearly included in admiralty jurisdiction. *E. g., St. Hilaire Moye v. Henderson,* 496 F.2d 973 (8th Cir.), *cert. denied,* 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974). *See* G. Gilmore and C. Black, *The Law of Admiralty* 23 & 23 n. 77 (2d ed. 1975). The nature of the allegedly negligent acts underlying Makela's claims against appellants is largely irrelevant. It is sufficient for purposes of admiralty jurisdiction in this case that a passenger is suing for personal injuries allegedly due to the negligence of the vessel's owners and crew on navigable waters. *See Kermarec v. Compagnie Generale,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Gibboney v. Wright,* 517 F.2d 1054, 1059 (5th Cir. 1975).

To be sure, the accident that injured Makela occurred on dry land. Under the terms of the Admiralty Extension Act, 46 U.S.C. § 740 (1976), however, this circumstance does not destroy admiralty jurisdiction over Makela's claims against the appellants. The Admiralty Extension Act provides in pertinent part:

The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

In *Gutierrez v. Waterman S.S. Corp.,* 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963), the Supreme Court held that the Admiralty Extension Act applies not only to injuries caused by the impact of a vessel itself, but also to those due to alleged acts of negligence by a vessel's crew. In that case, a longshoreman was injured when he slipped on loose beans that had been spilled on the dock from defective bags in the course of unloading. The defendant argued that the federal courts lacked jurisdiction to hear the longshoreman's claims. The Court held, however, that admiralty jurisdiction is established when

it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act. [*Id.* at 210, 83 S.Ct. at 1188 (footnote omitted).]

These conditions for admiralty jurisdiction are fully satisfied in the present case.[5] *Cf. Tullis v. Fidelity and Casualty Co. of New York,* 397 F.2d 22, 23–24 (5th Cir. 1968) (admiralty jurisdiction established by a crew boat passenger's allegation that defendant boat owner failed to provide a reasonably safe means of debarking).[6]

---

**5.** Although it might be argued that Makela's injury is remote from the wrongful act, the accident occurred some six minutes after the S.S. Flamingo docked, on a street that adjoins the dock. In our view, this is not sufficiently remote in time and space to destroy admiralty jurisdiction. We intimate no view as to whether Makela's injury was remote in the sense of not having been proximately caused by the appellants' alleged acts of negligence. That issue remains for the trier of fact to decide. *But cf. Pryor v. American President Lines,* 520 F.2d 974 (4th Cir. 1975), *cert. denied,* 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 644 (1976), and cases there cited (requiring proximate cause to invoke the Admiralty Extension Act where the only permissible inference is that the vessel did not proximately cause the injury).

**6.** In *Gutierrez v. Waterman S.S. Corp., supra,* the Supreme Court not only found admiralty

jurisdiction, but also held that the defendant shipowner was negligent towards the plaintiff longshoreman and strictly liable for breach of its warranty of seaworthiness. The Court restricted the scope of this latter holding in *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971), another longshoreman suit for dockside injuries, this time caused by equipment owned and operated by the stevedore. After observing that "in *Gutierrez, supra,* federal admiralty jurisdiction was clearly present since the Admiralty Extension Act on its face reached the injury there involved[,]" the Court stated:

The decision in *Gutierrez* turned, not on the "function" the stevedore was performing at the time of his injury, but, rather, upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers, which the Court held to be an "inju-

Makela cites a number of cases in support of the district court's holding that it lacked jurisdiction. In our view, all of these cases are dissimilar in crucial respects from the case at hand. For example, in *Peytavin v. Government Employees Ins. Co.*, 453 F.2d 1121 (5th Cir. 1972), the plaintiff sued for whiplash injuries sustained when he was struck from behind by another automobile while parked on a floating pontoon at a ferry landing. The court held that the plaintiff's claim did not come within federal admiralty jurisdiction, observing that neither the conduct of the parties (apart from their use of the pontoon), nor the nature or apparent cause of the accident, nor the injury sustained demonstrated a connection with maritime activities or interests. *Id.* at 1126–27.

Notwithstanding this language, the very factors that led the court in *Peytavin* to distinguish its earlier decision in *Byrd v. Napolean Ave. Ferry Co., Inc.,* 227 F.2d 958 (5th Cir. 1955), *aff'g per curiam* 125 F.Supp. 573 (E.D.La. 1954), *cert. denied,* 351 U.S. 925, 76 S.Ct. 783, 100 L.Ed. 1455 (1956) (upholding admiralty jurisdiction), support our determination that jurisdiction exists here. *See Peytavin v. Government Employees Ins. Co., supra,* 453 F.2d at 1127. Here, Mr. Makela, like the plaintiff in *Byrd,* was a passenger aboard a commercial vessel and the defendants are its owners and oper-

ators. Their alleged negligence, unlike that of the defendant driver in *Peytavin,* involves their performance of maritime duties in caring for their passengers. *Cf. St. Hilaire Moye v. Henderson, supra* (admiralty defendants found negligent in their operation of a pleasure boat).[7] Finally, we note that the sequence of causal events alleged in this case started on board the vessel and ended on land, calling into play the Admiralty Extension Act. None of the cases cited by Makela shares this last critical feature. Nor do they address the duties of vessel owners or operators to their passengers, a traditional maritime concern.

We conclude, then, that Makela's claim against Excursions comes within the admiralty jurisdiction of the federal courts.[8] We reverse the decision of the district court dismissing the appellants' action, and remand the case for further proceedings consistent with this opinion.

ry, to person . . . caused by a vessel on navigable water" which was consummated ashore under 46 U.S.C. § 740. The Court has never approved an unseaworthiness recovery for an injury sustained on land merely because the injured longshoreman was engaged in the process of "loading" or "unloading." [*Id.* at 210–11, 92 S.Ct. at 424. (footnote omitted).]

Since *Victory Carriers,* courts faced with on-shore seaworthiness claims have typically attempted to ascertain whether the allegedly defective piece of equipment causing the injury was, at the time of the accident, an appurtenance of a vessel. *See, e. g., Kinsella v. Zim Israel Navigation Co., Ltd.,* 513 F.2d 701 (1st Cir. 1975). In the case at hand, however, this issue does not arise, as there is no claim of unseaworthiness. Makela simply alleges that the appellants were negligent in operating the S.S. Flamingo on navigable waters and in providing a safe means of exit for its passengers.

See generally 7A *Moore's Federal Practice* ¶ .325[4] (2d ed. 1979).

7. Makela points out that his injuries, like those of the whiplash victim in *Peytavin,* show no particular maritime character. The same thing is true, however, of the fall on spilled beans suffered by the plaintiff longshoreman in *Gutierrez, supra. Cf. The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935) (admiralty plaintiff who fell off a step at the end of a gangplank onto the dock recovered damages). We do not consider the nature of the plaintiff's injury to be critical in determining the scope of admiralty jurisdiction.

8. The issue of whether the district court has jurisdiction to entertain Makela's claims against the other parties named in his state court action is not before us. *See generally Maryland Port Administration v. S.S. American Legend,* 453 F.Supp. 584, 587–89 (D.Md.1978), and cases there cited.