100 F.Supp.2d 1156 (2000)
In the Matter of the COMPLAINT OF LUHR BROS., INC., as Owner of the M/V CLETUS, Barge L 216, Barge L 230, Barge L 329, Barge L 338, Barge L 339, and Barge L 350; For Exoneration from or Limitation of Liability.
No. 1:99CV130 RWS.
United States District Court, E.D. Missouri, Southeastern Division.
May 22, 2000.
*1157 James W. Herron, Christopher C. Swenson, Lewis and Rice, St. Louis, MO, for Luhr Brothers, Inc., petitioner.
Robert L. King, Associate, Carr and Korein, St. Louis, MO, for Shelby Warren, respondent.

MEMORANDUM AND ORDER
SIPPEL, District Judge.
Petitioner Luhr Bros., Inc. filed this Complaint seeking exoneration from or limitation of liability from claims arising out of a motor vehicle accident in which two of its employees were involved. This type of relief is available under admiralty law. Respondent Shelby Warren is the Personal Representative of the Estate of Johnny Dwaine Warren, one of the Luhr Bros. employees. He was fatally injured in the accident. Respondent asserts that because the accident occurred on a highway after the employees debarked from Luhr Bros.' vessel, federal admiralty jurisdiction is lacking and the case should be dismissed.
The Court will dismiss this case because Luhr Bros. has failed to establish sufficient facts to invoke the Court's admiralty jurisdiction.

Background
Luhr Bros. is the owner of the vessel M/V CLETUS. The vessel was proceeding with barges and cargo on a voyage from Mile 304 Lower Mississippi AHP to Luhr Bros.' facility at Alexandria, Louisiana. Johnny D. Warren and William D. Emmons were employed by Luhr Bros. as deckhands assigned to and in the service of the M/V CLETUS. Warren's normal work schedule was thirty-eight days onboard and fourteen days off. On November 17, 1999, Warren and Emmons had finished their shift onboard and debarked from the M/V CLETUS during a crew change. Luhr Bros. alleges that both individuals remained in the service of the M/V CLETUS as they drove from the vessel to Luhr Bros.' office in Cape Girardeau, Missouri in a company crew van. Approximately forty-five minutes after Warren and Emmons left the M/V CLETUS, their vehicle was involved in an accident on Louisiana Highway 15 in Concordia Parish, Louisiana. The van driver had fallen asleep at the wheel. Warren was fatally injured and Emmons sustained bodily injuries. Luhr Bros. alleges that the accident occurred while both individuals were in the course and scope of their employment.
Luhr Bros. filed this Complaint seeking exoneration from or limitation of liability from any claims that might arise out of the accident pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181-195 inclusive. Respondent represents the estate of Johnny D. Warren. Respondent points out that the accident occurred on a highway approximately forty-five minutes after Warren and Emmons disembarked from the M/V CLETUS. Respondent asserts that federal admiralty jurisdiction is lacking because of the location of the accident and the tenuous connection between the accident and any activity related to admiralty. Respondent argues that the case should be dismissed because the Court *1158 lacks subject matter jurisdiction over the Complaint.

Analysis

Standing
As an initial matter, Luhr Bros. contends that "it is axiomatic that" Respondent does not have standing to move for dismissal because Respondent has not filed a claim. Luhr Bros. does not offer any legal authority which supports this proposition.
By contrast, Rule 12 of the Federal Rules of Civil Procedure directs that a motion which asserts any of the Rule's enumerated defenses shall be raised before a responsive pleading is filed. The supplemental federal rules which govern admiralty cases do not dictate otherwise.[1] Therefore, the Court finds that Respondent has standing to move for dismissal under Fed.R.Civ.P. 12.

Jurisdiction
Respondent has moved to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). To determine whether it has subject matter jurisdiction, the Court is free to review matters outside of the complaint such as affidavits and documents. Osborn v. United States, 918 F.2d 724, 729-31 (8th Cir.1990). Unlike a decision based on a Rule 12(b)(6) motion, a court's review of information outside of a complaint does not convert a Rule 12(b)(1) motion into a Rule 56 motion for summary judgment. Id. Contrary to Petitioner's position in it brief asserting that the allegations of a complaint are accepted as true for purposes of a Rule 12(b)(1) dismissal motion, a Rule 12(b)(1) motion is distinct in that, unlike a Rule 12(b)(6) motion, there is no presumptive truthfulness attached to a plaintiff's allegations. Id. at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir.1977)).
The traditional test for tort admiralty jurisdiction asked only whether a tort occurred on navigable waters. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). If it did, admiralty jurisdiction followed; if it did not, admiralty jurisdiction did not exist. Id. at 532, 115 S.Ct. 1043. This simple locality test was complicated by the rule that the injury had to be wholly sustained on navigable waters for the tort to be within admiralty. Id. Torts that occurred on dry land fell outside of admiralty jurisdiction even though there was a substantial connection to an activity on navigable waters. For example, if a ship rammed into a dock and damaged it, admiralty jurisdiction did not attach because the dock was viewed as an extension of the land.
This strict application of admiralty jurisdiction was changed in 1948 when Congress enacted the Extension of Admiralty Jurisdiction Act, 46 U.S.C.App. § 740. The Act provided that admiralty jurisdiction of the United States shall extend to and include all cases of damage or injury, to a person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land. Grubart, 513 U.S. at 532, 115 S.Ct. 1043. The purpose of the Act was to clear up the sometimes confusing line between land and water, by investing admiralty with jurisdiction over all cases where an injury was caused by a ship or other vessel on navigable water, even if such injury occurred on land. Id.
In Grubart, the Supreme Court further clarified the scope of admiralty jurisdiction which it had previously addressed in other decisions. In Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 *1159 L.Ed.2d 300 (1982), the Court was faced with tort claims which arose out of the collision of two pleasure boats in a navigable river estuary. The Court held that admiralty jurisdiction attached even though jurisdiction existed only if "the wrong" had "a significant connection with traditional maritime activity," Id. at 674, 102 S.Ct. 2654. Although pleasure boats themselves had little to do with the maritime commerce which is the heart of the admiralty court's basic work, the Court found that the potential disruptive impact upon maritime commerce of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compelled the Court to find that jurisdiction in admiralty was proper and appropriate. Id. at 675, 102 S.Ct. 2654.
In Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court held that federal admiralty jurisdiction existed in a suit involving tort claims arising when a fire, caused by a defective washer/dryer aboard a pleasure boat docked at a marina, burned the boat, other boats docked nearby, and the marina itself. Id. at 367, 110 S.Ct. 2892. The Court focused on two points to determine the relationship of a claim to the objectives of admiralty jurisdiction. First, the Court noted that the incident causing the harm, the burning of docked boats at a marina on navigable waters, was of a sort likely to disrupt maritime commercial activity. Id. at 363, 110 S.Ct. 2892. Second, the Court found a substantial relationship with a traditional maritime activity based on the kind of activity from which the incident arose, that was, the storage and maintenance of a vessel on navigable waters. Id. at 365-367, 110 S.Ct. 2892.
In Grubart, after reviewing its decisions in Foremost and Sisson, the Supreme Court expressly stated that a party seeking to invoke federal admiralty jurisdiction under the Limitation of Liability Act over a tort claim must satisfy conditions of both location and a connection with a maritime activity. 513 U.S. at 534, 115 S.Ct. 1043. The location test turns whether the tort occurred on navigable water or, under the rubric of the Extension of Admiralty Jurisdiction Act, whether an injury suffered on land was caused by a vessel on navigable water. Id. The connection test raises two subissues. First a court must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Id. Second, a court must ascertain whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. Id.
The Eighth Circuit Court of Appeals has also applied the Supreme Court's two part test for admiralty jurisdiction to cases under the Limitation of Liability Act. See Three Buoys Houseboat Vacations U.S.A. v. Morts, 921 F.2d 775, 777 (8th Cir.1990) (admiralty jurisdiction as to torts requires locality and nexus; locality is satisfied by a navigable waterway, while nexus is satisfied by a sufficient relationship of the vessel to maritime activities).
Respondent argues that the facts of the present case fail to establish either the locality prong or the connection prong of admiralty jurisdiction. Failure to establish either prong is fatal to an assertion of admiralty jurisdiction. Grubart, 513 U.S. at 534, 115 S.Ct. 1043.
The locality prong addresses where the tort occurred. Although courts have applied the Extension of Admiralty Act to find admiralty jurisdiction even though a tort occurred on dry land, these cases relied on the fact that the tort had some actual connection to an activity on the vessel and that the tort occurred very near the vessel. See Duluth Superior Excursions, Inc. v. Makela, 623 F.2d 1251 (8th Cir.1980); see also Thier v. Lykes Bros., Inc., 900 F.Supp. 864 (S.D.Tex.1995).
In Duluth, admiralty jurisdiction was found in a case involving two passengers who had just disembarked from a "booze *1160 cruise" around the Duluth-Superior harbor. 623 F.2d at 1252. One of the passengers, who was allegedly intoxicated, got in his car after debarking and struck the other passenger as he crossed the street near the boat. Even though the accident occurred on dry land the court found admiralty jurisdiction proper through application of the Extension of Admiralty Jurisdiction Act because the sequence of causal events (the service of liquor on the cruise leading to intoxication which contributed to the accident) started on board the vessel and ended on land. Id. at 1254. The court specifically noted that the incident was not remote in time and space so as to destroy admiralty jurisdiction because the accident occurred on a street that adjoins the dock just six minutes after the vessel docked. Id. at 1253 n. 5.
In Thier, a merchant marine cadet was injured in an automobile accident which occurred while the vehicle was being driven by chief officer of vessel. 900 F.Supp. at 866. The court found that admiralty jurisdiction applied through the application of the Extension of Admiralty Jurisdiction Act because the chief officer had become intoxicated on board the vessel and was intoxicated at the time of the accident. Id. Therefore, the negligence of the vessel's owner and the chief officer began on board and caused the injury on land. In addition, the accident happened just down the street from the dock
In the present case, the injury to Emmons and Warren was not part of a sequence of causal events which began on the vessel like the intoxication in Duluth and Thier. In a case very similar to the one before the Court, a district judge found that a vessel owner who sought a limitation of liability arising from an automobile accident failed to establish admiralty jurisdiction. In re Nolty J. Theriot, Inc., 841 F.Supp. 209 (S.D.Tex.1994). In that case, the vessel owner sought to limit its liability after several of its crewmembers were injured in Louisiana in an automobile accident. The crew was in a company vehicle en route to Port Arthur, Texas to join a crew change on the owner's vessel when the accident occurred. Id. at 210.
The court applied the two part inquiry of locality and nexus, mandated by the Supreme Court, and determined that neither prong was established. The locality prong did not exist because the accident occurred on dry land at a substantial distance from the ship. Id. at 211. There was not a causal relationship between the accident and an activity that began on the ship which would invoke the application of the Extension of Admiralty Jurisdiction Act.
The second part of the inquiry, the nexus prong, contains two aspects: (1) the potential impact on commercial maritime commerce, and (2) the substantial relation between the act and a traditional maritime activity. Id. In addressing these aspects the court found that:
[a]ny land-based liability of a shipowner may seriously affect its solvency and, consequently, affect maritime commerce in general. This is true for every act of the shipowner that generates a liability, whether an office lease, supply contract, or ordinary tort. This is not enough to satisfy the nexus requirement. When these activities do not have a substantial relation to traditional maritime activity, there is no admiralty jurisdiction. The solvency of the company may be destroyed, but not the solvency of the voyage. A car wreck on dry land with no particular relation to a vessel or maritime commerce, except that the vehicle had passengers going to join a ship, does not bear a sufficient relation to traditional maritime activity to fall under admiralty jurisdiction.
Id. The court went on to expressly reject the extension of a limitation of liability action to the facts before the court:
[e]ven if admiralty jurisdiction did exist, this action would fail. The purpose of the limitation of liability procedure is to assure that liability for damage from *1161 a disaster at sea that is occasioned without the participation of the shipowner shall not exceed the value of the vessel at fault together with the pending freight. Helena Marine Service, Inc. v. Sioux City, 564 F.2d 15 (8th Cir.1977); Pennzoil Producing Co. v. Offshore Express, 943 F.2d 1465, 1473 (1991).
Because world maritime operates under limitation of liability rules, congress sought to insure that American shipping too would attract investment capital by alleviating the threat of unlimited economic exposure in situations where the shipowner is without privity or knowledge. University of Texas Medical Branch at Galveston v. United States, 557 F.2d 438 (5th Cir.1977). These purposes are not served by allowing a limitation of liability claim in this case. The accident did not occur at sea, nor did it occur on the vessel. The vessel did not contribute to the accident, and the accident had no direct involvement with maritime commerce. It is true that the accident occurred while the owner's agent was gathering a crew; however, this action was in preparation for a voyage, not the beginning of a voyage. None of the reasons for the personification of the vessel or the voyage apply to a land based support activity that anticipates the beginning of a voyage. While an ownerfurnished means of transport might meet the tests for maritime conversion if it had happened in mid-voyage, that is not this case.
The law has furnished the whole shipowning entity with alternative ways to limit its whole liability through recognition of the corporate form of doing business and through the bankruptcy laws. There is no limitation of liability cause of action.
Id. at 211-12. The court dismissed the limitation of liability action for lack of admiralty jurisdiction.
Applying the two-prong test from the Supreme Court and the analysis from Theriot to the facts of the present case leads the Court to conclude that admiralty jurisdiction is lacking. The undisputed affidavit of Shelby Warren, the decedent's mother, establishes that the injuries from which Petitioner seeks to limit its liability occurred on a Louisiana highway some forty-five minutes after deckhands Warren and Emmons debarked from the M/V CLETUS. Warren and Emmons had completed their shift on the vessel and were returning to Cape Girardeau, Missouri in a company vehicle. The driver fell asleep at the wheel causing the vehicle to leave the highway and overturn. Emmons survived the crash but Warren was fatally injured.
The locality prong is clearly lacking in this case. It is lacking not because the accident occurred on dry land but because of the remote place and time of the accident and the lack of any facts that indicate that the injury suffered on land was caused by a vessel on navigable water.
The nexus prong is also lacking for the same reasons articulated by the district judge in Theriot. As in Theriot this motor vehicle accident on dry land was not related to any particular activity aboard the M/V CLETUS. The fact that the vehicle had crew members returning home after their shift on board a vessel does not bear a sufficient relation to any traditional maritime activity to fall under admiralty jurisdiction.
A final point concerns Luhr Bros.' suggestion that this Court has jurisdiction over the Complaint because of Emmons' and Warren's purported status as seamen under Jones Act. "[T]he Jones Act `effectively gives an injured seaman the litigation options of (1) suing directly under the federal courts' general admiralty jurisdiction or (2) suing for damages at law, in either (a) state court or (b) a federal district court under the Jones Act.'" Wingerter v. Chester Quarry Co., 185 F.3d 657, 666 n. 5 (7th Cir.1998) (quoting 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3677, at 470-71 *1162 (3d ed.1998)). The option of filing suit in admiralty is available to the seaman even for land-based injuries because "admiralty jurisdiction over the [Jones Act] suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters". O'Donnell v. Great Lakes Dredge & Dock Co., 318 U.S. 36, 42-43, 63 S.Ct. 488, 87 L.Ed. 596 (1943).
While the Jones Act broadly extends admiralty jurisdiction to an injured seaman it does not extend the same jurisdiction to a ship owner. In Grubart, the Supreme Court expressly stated that a party seeking to invoke federal admiralty jurisdiction under the Limitation of Liability Act over a tort claim must satisfy conditions of both location and a connection with a maritime activity. 513 U.S. at 534, 115 S.Ct. 1043. Luhr Bros. has failed to establish admiralty jurisdiction under the standard set in Grubart. The Jones Act does not confer admiralty jurisdiction over Luhr Bros.' Complaint.
Accordingly,
IT IS HEREBY ORDERED that Respondent Shelby Warren's Motion to Dismiss for Lack of Subject Matter Jurisdiction [# 18] is GRANTED.
NOTES
[1] Under the Supplemental Rules for Certain Admiralty and Maritime Claims, Respondent represents one of the only parties who is specifically and automatically identified as a potential claimant. Rule F provides that in cases involving a death, in addition to the public notice provision, the Petitioner must direct a copy of the Complaint to the decedent's residence.